Charles A. DE PRIEST, Plaintiff,

v.

The PENNSYLVANIA RAILROAD COMPANY, Defendant.

Civ. No. 356–55.

United States District Court
D. New Jersey.

Sept. 19, 1956.

Powell & Davis, by James M. Davis, Jr., Mount Holly, N. J., for plaintiff.

Archer, Greiner, Hunter & Read, by F. Morse Archer, Jr., Camden, N. J., for defendant.

MADDEN, District Judge.

■ This is an action by plaintiff, Charles A. DePriest, against the defendant, The Pennsylvania Railroad Company, alleging breach of contract and seeking damages. Plaintiff is a resident and citizen of New Jersey, defendant is a corporation of Pennsylvania, and the amount involved is more than $3,000 hence it is a diversity action.

Plaintiff, a former fireman and engineer employed by defendant railroad company, voluntarily retired on March 10, 1955 and obtained his pension or annuity under the Railroad Retirement Act.*

■ During the time of his employment, plaintiff alleges that there was in existence between defendant and the Brotherhood of Locomotive Engineers, effective March 1, 1941, an agreement which, among other things, provided that when, exclusive of any emergency, an engineer of defendant railroad company operated a train over foreign trackage and performed a road service that he shall be paid an extra day's pay.

Plaintiff by this suit started April 11, 1955 alleges that beginning February 1, 1948 and up to the date of his retirement there were between 1,000 and 1,500 occasions when he so operated a train for defendant and he seeks compensation for such services under the provisions of the contract.

The terms of this contract were first placed in litigation before this Court in 1951 in the matter of Naylor v. Pennsylvania R. Co., D.C., 106 F.Supp. 84, when the plaintiff there brought suit to restrain defendant there and here from entering into a settlement of the claims alleged to be due under and by virtue of the terms of the contract hereinbefore referred to. This Court held that the interpretation of the contract was for the expert body established by Congress exclusively for that purpose, to wit, National Railroad Adjustment Board under the provisions of the Railway Labor Act.[1] As a result the Court conditionally retained jurisdiction of the matter to give the there plaintiffs opportunity to press their claims before the administrative body. Subsequently, upon being advised that the matters were being litigated before the National Railroad Adjustment Board, the Court dismissed upon the ground "that the * * * suit being one

* 45 U.S.C.A. § 228a et seq.

1. 45 U.S.C.A. § 151 et seq.

basically for the interpretation of an existing contract, which interpretation may affect the future relations of the parties, it should be heard by that expert body so established by Congress to deal with such problems, namely, the National Railway Adjustment Board." Naylor v. Pennsylvania R. Co., D.C., 106 F.Supp. 84, 86.

The motion in the present matter is twofold (a) to dismiss for lack of jurisdiction and/or (b) to postpone trial of the matter by this Court until the disposition of a number of matters now pending before the National Railroad Adjustment Board wherein the very question presented here; i. e., the interpretation of this phase of the employment contract, is under consideration by that body.

While the plaintiff here is not an actual party before the National Railway Adjustment Board, the statute provides for enforcement of a Board order not only at the suit of petitioner before the Board but by any person for whose benefit such order was made.[2] This circuit in Kirby v. Pennsylvania R. Co., 3 Cir., 188 F.2d 793, approved this right given by the statute so that the plaintiff would have a basis for his action if the interpretation by the Board of this question is favorable to the petitioners before that body even though plaintiff here is not one of them.

In the matter of Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, at pages 242, 243, 244, 70 S.Ct. 577, at page 579, 94 L.Ed. 795, the Supreme Court said:

"In this case the dispute concerned interpretation of an existing bargaining agreement. Its settlement would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties. This type of grievance has long been considered a potent cause of friction leading to strikes. It was to prevent such friction that the 1926 Act provided for creation of various Adjustment Boards by voluntary

agreements between carriers and workers. 44 Stat. 578. But this voluntary machinery proved unsatisfactory, and in 1934 Congress, with the support of both unions and railroads, passed an amendment which directly created a national Adjustment Board composed of representatives of railroad and unions. 48 Stat. 1189–1193. The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The Adjustment Board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems.

"The paramount importance of having these chosen representatives of railroads and unions adjust grievances and disputes was emphasized by our opinion in Order of Ry. Conductors v. Pitney, supra [326 U.S. 561, 66 S.Ct. 322 90 L.Ed. 318]. There we held, in a case remarkably similar to the one before us now, that the Federal District Court in its equitable discretion should have refused 'to adjudicate a jurisdictional dispute involving the railroad and two employee accredited bargaining agents * * *.' Our ground for this holding was that the court 'should not have interpreted the contracts * * *' but should have left this question for determination by the Adjustment Board, a congressionally designated agency peculiarly competent in this field. 326 U.S.

2. 45 U.S.C.A. § 151 et seq.

at pages 567–568, 66 S.Ct. at page 325, 90 L.Ed. 318. This reasoning equally supports a denial of power in any court—state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act."

And further, 339 U.S. at page 244, 70 S.Ct. at page 580:

"We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive."

Counsel for plaintiff here relies heavily upon Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. In that case Moore, a former employee, brought suit for damages for wrongful discharge by the railroad in violation of a contract between the defendant railroad and the Brotherhood of Railroad Trainmen. He did not seek reinstatement but money damages for improper discharge. The Court held that such suit could be maintained and that Moore was not required to seek adjustment before the Railway Adjustment Board.

Counsel for present plaintiff likens the present controversy to the Moore case, supra. In this Court's opinion there is a distinguishing factor. That is, that while the present plaintiff DePriest has ended his relations with defendant railroad as in the Moore case, the interpretation of the contract here will affect working conditions of present employees and may lead to labor strife, the very type of friction the National Railway Labor Act was designed to prevent. In the Moore case it was merely an interpretation of the contract in the face of the facts present in that case, the likelihood of a similar case being remote. Here there are many identical cases and many present employees involved. In the Slocum case, supra, the Court, referring to the Moore case, said, 339 U.S. at page 244, 70 S.Ct. at page 580:

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore

was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."

The Court is, therefore, of the opinion that the interpretation of this contract being one that would seriously affect the relations between present employees (other than plaintiff) and the defendant-employer is to be left to the exclusive jurisdiction of the National Railroad Adjustment Board. However, should the Court go so far as to dismiss for lack of jurisdiction?

If the interpretation of the pending matters on this question by the administrative body is against the claimants thereunder, is it binding upon this Court in the present matter? We think so, under the authority of the Slocum case, supra, and Newman v. Baltimore & Ohio Railroad Co., 3 Cir., 1951, 191 F.2d 560.

If, on the other hand, the National Railroad Adjustment Board rules in favor of the claimants appearing before it, does the plaintiff here have a good cause of action which might be lost or at least jeopardized by a dismissal now of this matter and a running of the statute of limitations which, incidentally, has been pleaded as a defense? The Court feels so, under the authority of Kirby v. Pennsylvania R. Co., supra. To that end

the Court will retain jurisdiction until disposition of the matters presently before the National Railroad Adjustment Board and the matter will be stayed until such disposition.

Counsel will prepare an order.