George M. DAY, Administrator ad Litem of the Estate of Charles A. De Priest, Plaintiff-Appellant,

v.

PENNSYLVANIA RAILROAD COMPANY.

No. 12462.

United States Court of Appeals Third Circuit.

Argued April 1, 1958.

Decided Aug. 12, 1958.

Certiorari Granted Nov. 10, 1958.

See 79 S.Ct. 124.

James M. Davis, Jr., Mount Holly, N. J. (Powell & Davis, Mount Holly, N. J., John A. Matthews, Newark, N. J., on the brief), for appellant.

F. Morse Archer, Jr., Camden, N. J. (John P. Hauch, Jr., Archer, Greiner, Hunter & Read, Camden, N. J., John B. Prizer, Richard N. Clattenburg, Philadelphia, Pa., on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges and LAYTON, District Judge.

KALODNER, Circuit Judge.

The substituted plaintiff appeals from an Order entered against him in the District Court dismissing the complaint originally filed by his decedent.

Details of the action, proceedings, and contentions of the parties are set forth in prior opinions of the District Court and this Court[1] as well as in 155 F.

---

[1] DePriest v. Pennsylvania R. Co., 145 F. Supp. 596, appeal dismissed sub nom. Day v. Pennsylvania R. Co., 3 Cir., 1957, 243 F.2d 485.

Supp. 695, which immediately preceded this appeal.

Briefly stated, Charles A. DePriest commenced this action for damages against the defendant railroad asserting that pursuant to a collective bargaining agreement, and during his employment by the defendant railroad as a locomotive engineer, he was entitled to compensation greater than that actually paid to him. The complaint recited that DePriest had processed his claim through the defendant's organization, but did not proceed to the National Railroad Adjustment Board because he retired and severed his employment relationship. Although defendant's answer denied that DePriest's claim was administratively rejected by its general manager, it admitted that he was an employee in the period involved and averred that he relinquished all rights to return to service and had applied for his annuity.

Following our dismissal, for want of appellate jurisdiction, of the prior appeal of the decedent, 243 F.2d 485, the plaintiff moved to modify the stay order entered by the District Court. The defendant moved to dismiss the complaint on the ground that the court lacked jurisdiction of the subject matter. In support of the motion, defendant attached certified copies of three Awards made by the National Railroad Adjustment Board, First Division, in independent matters, all involving interpretation of the contract here involved with respect to the same issue. These Awards denied relief to the claimants; they were entered by the Board shortly before we rendered our decision on the prior appeal.

The District Court determined that the issue involved was one of interpretation of a collective bargaining agreement; that the question of interpretation was exclusively for the National Railroad Adjustment Board and that its finding was final and binding upon the plaintiff, 155 F.Supp. 695. Although the Opinion of the District Court proceeded upon an inquiry into the binding effect of the aforementioned Awards, which would presuppose jurisdiction, the Order actually entered dismissed the complaint for want of jurisdiction.

The questions now presented for disposition are whether the cause was within the jurisdiction of the District Court, and, if it was, whether the plaintiff is barred by the Awards submitted in support of defendant's motion.

■ We are of the opinion that the District Court was not without jurisdiction in the premises and that, at this stage of the action, it does not appear that the plaintiff is or should be barred from further proceedings.

There is no dispute here that the requirements of an ordinary diversity action are met. If the District Court is deprived of jurisdiction, that must appear from the provisions of the Railway Labor Act, 48 Stat. 1185, c. 691, 45 U.S.C.A. Section 151 et seq.

The term "employee" is defined in Section 1 Fifth of the Act, 45 U.S.C.A. Section 151 Fifth, to include "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner or rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission. * * * " Further, Section 3 First (i) of the Act, 45 U.S.C.A. Section 153 First (i), grants to the National Railroad Adjustment Board jurisdiction to hold hearings, make findings, and enter awards in all disputes between carriers and their employees "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions. * * * "

In this statutory framework, the United States Supreme Court permitted an employee who claimed to have been wrongfully discharged to maintain an action at law without resort to the Adjustment Board even though a question of interpreting a bargaining agreement was presented. Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754,

85 L.Ed. 1089. The Court there said at page 634 of 312 U.S., at page 756 of 61 S.Ct.:

"[We] find nothing in that [Railway Labor] Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court."

In Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, the railroad, having a dispute with two unions concerning the scope of their respective agreements, commenced an action for declaratory judgment, praying for an interpretation of both agreements. The Supreme Court emphasized the declared purpose of the Railway Labor Act, and noted that settlement of the dispute "would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties." 339 U.S. at page 242, 70 S.Ct. at page 579. Accordingly, it held that the jurisdiction conferred upon the Adjustment Board was exclusive, and that the courts were without power to adjudicate such a dispute.

As to the Moore decision, the Court pointed out:

"Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we held there, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board." 339 U.S. at page 244, 70 S.Ct. at page 580.

In the light of these decisions, the courts have consistently drawn a distinction between those cases in which the employee, having been discharged, accepts his discharge, and those in which he seeks a judicial interpretation of a collective bargaining agreement and enforcement of his employment rights in such manner as to affect future relations between the railroad and other employees. For example, see Newman v. Baltimore & Ohio R. Co., 3 Cir., 1951, 191 F.2d 560; Switchmen's Union of North America v. Ogden Union Ry. & Depot Co., 10 Cir., 1954, 209 F.2d 419, certiorari denied 347 U.S. 989, 74 S.Ct. 852, 98 L.Ed. 1123; Alabaugh v. Baltimore & Ohio R. Co., 4 Cir., 1955, 222 F.2d 861, certiorari denied 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748; Majors v. Thompson, 5 Cir., 1956, 235 F.2d 449.

The Railway Labor Act relates to disputes between employees and carriers. Its broad purposes are set forth in the Slocum decision:

"The first declared purpose of the Railway Labor Act is 'To avoid any interruption to commerce or to the operation of any carrier engaged therein.' * * * This purpose extends both to disputes concerning the making of collective agreements and to grievances arising under existing agreements. * * * The plan of the Act is to provide administrative methods for settling disputes before they reach acute stages that might be provocative of strikes. Carriers are therefore required to negotiate with bargaining representatives of the employees. * * * The Act also sets up machinery for conciliation, mediation, arbitration and adjustment of disputes, to be invoked if negotiations fail.

"In this case the dispute concerned interpretation of an existing bargaining agreement. Its settlement would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties. This type of grievance has long been considered a potent cause of friction leading to strikes. It was to prevent such friction that the [May 20] 1926 Act provided for creation of various Adjustment Boards * * *. But this voluntary machinery proved unsatisfactory, and in 1934 Congress * * * passed an amendment. * * * The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. * * * Precedents established by it [the Adjustment Board], while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems." 339 U.S. at pages 242–243, 70 S.Ct. at page 679.

As already indicated, it was precisely along these lines that the Moore case was distinguished.

Here, as in the Moore case, the employer-employee relationship has been terminated; the substantive issue is whether something is owing to the plaintiff. While the court may have to consider a provision of a bargaining agreement, its interpretation would have no binding effect upon future interpretations by the Board, and the future relations between the carrier and its other employees are not involved. Since the claimant in the Moore, or in the instant, situation, is not an employee, there does not exist the unhappy discontent among co-employees because of dissimilar treatment for similar work.

We see no reason to distinguish between this situation and one to recover for wrongful discharge.[2] Cepero v. Pan American Airways, 1 Cir., 1952, 195 F. 2d 453, 455, certiorari denied 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653.

We reach, then, the issue discussed by the District Court in its Opinion, that is, whether the plaintiff is bound by the separate awards of the Adjustment Board denying the independent claims of three employees with respect to a similar substantive issue.

The effect of the motion of the defendant in this regard is that of a motion for summary judgment, and upon clearly settled principles such motion may be granted only where no material issue of fact exists and the moving party is entitled to judgment as a matter of law. Rules 12(b) and 56, Federal Rules of Civil Procedure,[3] 28 U.S.C.A.

■ In support of its motion, the defendant has attached certified copies of the three Awards upon which it relies. But these do not show that the plaintiff or his decedent was a party to any of them, or that either received due notice. Indeed, the recitation in the Awards of

---

2. In Sigfred v. Pan American World Airways, 5 Cir., 1956, 230 F.2d 13, 18, the plaintiff had submitted his claim to the Adjustment Board, which denied it. The Court held that no reviewable question of law was presented with respect thereto. As to the jurisdiction of the Court, see the dissenting Opinion of Judge Brown, 230 F.2d 19, 22–23.

However, in the case sub judice we are not presented with a similar situation. Rather, we are concerned with the issue, whether the jurisdiction of the Board is exclusive with respect to a controversy not yet submitted to it.

3. Lawlor v. National Screen Service Corporation, 3 Cir., 1956, 238 F.2d 59, 65, certiorari granted, judgment vacated (on other grounds) 1957, 352 U.S. 992, 77 S. Ct. 526, 1 L.Ed.2d 540; Sherwin v. Oil City National Bank, 3 Cir., 1956, 229 F.2d 835, 837; Frederick Hart & Co. v. Recordgraph Corporation, 3 Cir., 1948, 169 F.2d 580, 581.

the parties to the proceedings does not include the plaintiff or the decedent. It is difficult to see that on such a presentation the defendant should be entitled to summary judgment in its favor. Elgin, J. & E. Ry. Co. v. Burley, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886.

The District Court relied upon our decisions in Kirby v. Pennsylvania R. R. Co., 1951, 188 F.2d 793, Barnett v. Pennsylvania-Reading Seashore Lines, 1957, 245 F.2d 579, and the decision on the prior appeal in this case, 1957, 243 F.2d 485. However, the Kirby case involved the right of an employee to take advantage of an Award *against* a carrier where he was able to demonstrate that he was a member of the class for whose benefit the Award was made. The Barnett case involved the finality of an Award in a proceeding to which the employee-plaintiff was a party. Neither case involved or disposed of the issue presented here. The prior appeal in this case was dismissed because the Order of the District Court, which stayed the action pending disposition of the three proceedings above referred to by the Board, was interlocutory and not appealable. We did suggest, 243 F.2d at page 487, that the District Court might permit discovery and other pretrial proceedings, since "even if the plaintiff's right is established by the Board the amount of the claim at least may well have to be established in the present action in the district court." This was consistent with the Kirby case but even then merely assumes the plaintiff might bring himself within its operation. Our decision does not hold, and does not suggest, that a negative Award, in a proceeding to which the claimant is not a party and of which he does not receive notice, is binding upon him.

This does not mean that the Board's interpretation of the collective bargaining agreement should be ignored or taken lightly. Justice Rutledge put the matter in useful perspective in Washington Terminal Co. v. Boswell, 1941, 75 U.S.App.D.C. 1, 124 F.2d 235, 241, where he said:

"The whole adjustment procedure up to the point of award, findings and order by the Board, appears to be constructed upon the idea that it is not the business of lawyers, but is the business of railroad men, workers and managers alike. That does not make their findings and decisions less probative; rather it should make them more so. They know the language, functions and purposes of railroads and of their collective agreements. Their judgment is informed by experience in negotiating and administering these contracts. Because of this they, perhaps better than lawyers, are qualified to interpret and apply them. Whether so or not, their judgment should carry weight when the judicial stage of controversy is reached. It cannot be assumed, therefore, that the findings have no substantive effect, merely because they were not given finality, as to either facts or law. They are probative, not merely presumptive in value, having effect fairly comparable to that of expert testimony."

For the reasons stated, the Order of the District Court will be vacated and the cause remanded for further proceedings not inconsistent herewith.