# PENNSYLVANIA RAILROAD CO. *v.* DAY, ADMINISTRATOR.

No. 397. Argued March 26, 1959.—Decided June 29, 1959.

*Richard N. Clattenburg* argued the cause for petitioner. With him on the brief were *F. Morse Archer, Jr., John P. Hauch, Jr.* and *John B. Prizer.*

*James M. Davis, Jr.* argued the cause for respondent. With him on the brief was *John A. Matthews.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

In April 1955 Charles A. DePriest began an action in the District Court for the District of New Jersey, claiming $27,000 in additional compensation from the Pennsylvania Railroad. DePriest had been employed as a locomotive engineer by the Railroad from May 1918 to March 1955, at which time he resigned his employment and applied for an annuity. He alleged that under the terms of a collective bargaining agreement between the Railroad

and Brotherhood of Locomotive Engineers of which he was a member, he was entitled to an extra day's pay for each of the 1,000–1,500 times he had been assigned to leave his switching limits and perform service for his employer on tracks belonging to the Baltimore and Ohio Railroad Co. He relied on a provision of the collective bargaining agreement which provided extra compensation for engineers who were used beyond their switching limits under specially defined circumstances. DePriest further alleged that his claim had been rejected by his employer's representatives, including the Railroad's chief operating officer for the region in which he was employed. His retirement from service occurred immediately after this alleged rejection. Jurisdiction was based on diversity of citizenship. The District Court stayed the proceedings awaiting the disposition of similar claims against the Pennsylvania Railroad then pending before the First Division of the National Railroad Adjustment Board, 145 F. Supp. 596. An appeal from this interlocutory decision, not one granting or denying an injunction, was dismissed. 243 F. 2d 485. In the interim DePriest died and was replaced by an administrator. Following a rejection by the National Railroad Adjustment Board of claims against the Pennsylvania Railroad involving the same provisions of the collective bargaining agreement, the District Court dismissed the complaint on the ground that the Board's interpretations were final and as such binding on respondent, 155 F. Supp. 695. The Court of Appeals reversed, 258 F. 2d 62, holding that the determination by the Board of claims to which respondent was not a party was not binding on him, and that the District Court had jurisdiction over the claim. We granted certiorari, 358 U. S. 878, since this decision raised an important question in the administration of the Railway Labor Act of 1934. That Act, 48 Stat. 1185, 45 U. S. C. § 151 et seq., established a broad framework for the regula-

tion and adjustment of industrial controversies involving railroads.

The Act establishes, *inter alia,* the National Railroad Adjustment Board with the following purposes and functions:

> "The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on the date of approval of this Act, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." Railway Labor Act, § 3, First (i), 45 U. S. C. § 153, First (i).

The clash of economic forces which led to the passage of this Act, the history of its enactment, and the legislative policies which it expresses and which guide judicial interpretation have been too thoroughly and recently canvassed by this Court to need repetition.[1] On the basis of these guides to judicial construction we have held that the National Railroad Adjustment Board had exclusive primary jurisdiction over disputes between unions and carriers based on the provisions of a collective bargaining agreement. *Slocum* v. *Delaware, L. & W. R. Co.,* 339 U. S. 239. On the same day, we also decided *Order of*

---

[1] See, *e. g., Railroad Trainmen* v. *Chicago River & Ind. R. Co.,* 353 U. S. 30; *Slocum* v. *Delaware, L. & W. R. Co.,* 339 U. S. 239; *Order of Railway Conductors* v. *Pitney,* 326 U. S. 561; *Elgin, J. & E. R. Co.* v. *Burley,* 325 U. S. 711.

*Railway Conductors* v. *Southern R. Co.*, 339 U. S. 255, holding that the principles of *Slocum* were fully applicable to a claim by a group of conductors that they were entitled to extra compensation for certain "side trips" under the terms of their agreement with the carrier. That case, like the case now before us, involved claims for compensation which could only be adjudicated by a determination of the relevant facts and construction of the collective bargaining agreement. However, here, as was not the case in *Order of Railway Conductors*, the claimant has retired from railroad service. The immediate question is whether that factual difference makes a legal difference.

. The Act grants jurisdiction to the Board of "disputes between an employee . . . and a carrier . . . ." It defines "employee" as including:

"... every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission . . . ."

The National Railroad Adjustment Board was established as a tribunal to settle disputes arising out of the relationship between carrier and employee. All the considerations which led Congress to entrust an expert administrative board with the interpretation of collective bargaining agreements are equally applicable when, as here, the employee has retired from service after initiating a claim for compensation for work performed while on active duty. The nature of the problem and the need for experience and expert knowledge remain the same. The same collective bargaining agreement must be construed with the same need for uniformity of interpretation and orderly adjustment of differences. There is

nothing in the Act which requires that the employment relationship subsist throughout the entire process of administrative settlement. The purpose of the Act is fulfilled if the claim itself arises out of the employment relationship which Congress regulated. The Board itself has accepted this construction and adjudicates the claims of retired employees.[2] This uniform administrative interpretation is of great importance, reflecting, as it does, the needs and fair expectations of the railroad industry for which Congress has provided what might be termed a charter for its internal government. Moreover, the discharged employee may challenge the validity of his discharge before the Board, seeking reinstatement and back pay. See *Union Pacific R. Co.* v. *Price, post,* p. 601. Thus it is plain both from a reading of the Act in light of its purpose and the needs of its administration and from the settled administrative interpretation that the Board has jurisdiction over respondent's claim for compensation.

Since the Board has jurisdiction, it must have exclusive primary jurisdiction. All the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service. A contrary conclusion would create a not insubstantial class of preferred claimants.[3]

---

[2] *E. g.,* National Railroad Adjustment Board, First Division, Award No. 15406; *id.,* Awards Nos. 11888 (with interpretation of this award contained in Volume 81 of awards), 12418, 16129.

[3] In the year 1956–1957 there were 361,000 retired railroad employees receiving benefits under the Railroad Retirement Act. H. R. Doc. No. 278, 85th Cong., 2d Sess.

The inapplicability of *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, to the problem of this case, like its inapplicability to the problem in *Union Pacific R. Co.* v. *Price, post,* p. 601, decided today, is dealt with in the Court's opinion in that case.

Retired employees would be allowed to bypass the Board specially constituted for hearing railroad disputes whenever they deemed it advantageous to do so, whereas all other employees would be required to present their claims to the Board. This case forcefully illustrates the difficulties of such a construction. Several active workers have had claims similar to that of respondent rejected by the Board. To allow respondent now to try his claim in the District Court would only accentuate the danger of inequality of treatment and its consequent discontent which it was the aim of the Railway Labor Act to eliminate. We can take judicial notice of the fact that provisions in railroad collective bargaining agreements are of a specialized technical nature calling for specialized technical knowledge in ascertaining their meaning and application. Wholly apart from the adaptability of judges and juries to make such determinations, varying jury verdicts would imbed into such judgments varying constructions not subject to review to secure uniformity. Not only would this engender diversity of proceedings but diversity through judicial construction and through the construction of the Adjustment Board. Since nothing is a greater spur to conflicts, and eventually conflicts resulting in strikes, than different pay for the same work or unfair differentials, not to respect the centralized determination of these questions through the Adjustment Board would hamper if not defeat the central purpose of the Railway Labor Act.

Our decision in *Moore* v. *Illinois Central R. Co.*, 312 U. S. 630, does not stand in the way of this. The decision in that case has been given its proper, limited scope in *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239. *Moore* carved out from the controlling doctrine of primary jurisdiction the unusual and special situation of wrongful discharge where the aggrieved employee had been expelled from the employment relationship. Moreover,

since the discharge had been accepted as final by the employee, it is probable that the damages accrued primarily after the employment relationship had terminated.

Our consistent regard for the importance of having disputes between railroad employees and carriers settled by the administrative Board which Congress established for that purpose requires respondent to resort to the NRAB for adjudication of his claim.

The judgment is reversed, and the cause remanded, in order that the case may be returned to the District Court, with instructions to dismiss the complaint for lack of jurisdiction.

*Reversed and remanded.*

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS concur, dissenting.

I would affirm the judgment of the Court of Appeals for two reasons: I do not agree that the Railway Labor Act requires retired railroad employees to submit their back-wage claims to the National Railroad Adjustment Board; I believe that Act, as here construed to grant railroads court trials of wage claims against them while compelling the employees to submit their claims to the Board for final determination, denies employees equal protection of the law in violation of the Due Process Clause of the Fifth Amendment. Cf. *Bolling* v. *Sharpe,* 347 U. S. 497.

I.

The Court holds that the Railway Labor Act gives the National Railroad Adjustment Board exclusive jurisdiction of back-pay disputes between retired railroad employees and their ex-employer railroads. I cannot read the Labor Act that way. The controlling provision, § 3 First (i), confers power on the Board to adjust "dis-

putes between an employee or a group of employees and a carrier or carriers . . . ." [1] Seemingly to highlight the fact that the Act is to govern active workers only, Congress defined "employee" as "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee . . . ." [2] The railway engineer who brought this suit was not an employee within this definition. Prior to suit he had resigned his job, and had claimed an annuity under the Railroad Retirement Act of 1937, which requires a worker making such a claim to relinquish all rights to return to railroad service in the future. [3] Under these circumstances, the retired employee could not be, and was not "in the service" of the railroad or "subject to its continuing authority to supervise the manner of rendition of his service." No other language in the Act brings retired railroad employees within the exclusive jurisdiction of the Adjustment Board. I think the Court's holding represents an altogether unjustifiable interpretative liberty.

There are perhaps few statutes providing less of an excuse for departing from congressional language than the Railway Labor Act, at least insofar as its coverage is concerned. It is but one step in a series of congressional efforts to establish machinery for peaceful settlement of quarrels between railroads and railroad workers in order to avoid strikes and resulting interruption of railroad service. The Act as a whole is a product of many years of thought, study, conferences, discussions, and experiments. Many witnesses, including representa-

---

[1] 48 Stat. 1191, 45 U. S. C. § 153 First (i).

[2] 44 Stat. 577, as amended, 45 U. S. C. § 151 Fifth.

[3] 50 Stat. 309, as amended, 45 U. S. C. § 228b.

tives of railroads and employees, have testified at many congressional hearings. The hearings show a solicitous interest by both groups in the language of the legislation. The Act touches sensitive subjects of importance to industrial peace, and represented as enacted a balance of interests reasonably satisfactory to all groups. As such, the plain meaning of its language should not lightly be disturbed.

The Court finds reasons outside the language of the Act, however, for expanding the Board's jurisdiction beyond the boundaries set by the definitions of Congress. These reasons, in my judgment, do not support the expansion of the Act's coverage which the Court makes. The Court argues that "All the considerations which led Congress to entrust an expert administrative board with the interpretation of collective bargaining agreements are equally applicable when, as here, the employee has retired from service after initiating a claim for compensation for work performed while on active duty." I am afraid this statement assumes a knowledge which the Court does not and cannot have. Of course some of the same considerations apply. I agree, for example, that the same collective bargaining agreement must be construed whether wages are claimed by an ex-employee or by an active employee. This is equally true, however, when an ex-employee sues for wrongful discharge under a collective bargaining agreement. Yet we have not hesitated on three separate occasions to say that such actions for wrongful discharge can be adjudicated in the courts, and that the courts themselves may construe the bargaining agreement. *Moore* v. *Illinois Central R. Co.*, 312 U. S. 630; *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239; *Transcontinental & Western Air, Inc.*, v. *Koppal*, 345 U. S. 653. Similarly, when the Board makes an award adverse to the railroad and the employee is forced to go

to the courts to have the award enforced, courts have felt free to interpret collective bargaining agreements differently from the way the Board had.[4]

Moreover, I do not agree with the Court that the problems involved in suits by ex-employees and active employees are necessarily the same. One cannot know all the complex of considerations which led Congress to adopt the Act. One can only surmise its reasons for carefully limiting the Act's scope to disputes between active railroad workers and their employers. It is clear, however, that active employees work together from day to day; their work frequently makes them live together in the same neighborhood; they, in fact, constitute almost a separate family of people, discussing their interests and affairs, and airing among themselves their complaints and grievances against the company. In such an atmosphere individual dissatisfactions tend to become those of the group, breeding industrial disturbances and strikes. We cannot know that this is true of retired employees, as the Court seems to take for granted. Instead, the very opposite would seem a much more likely assumption. Retired employees give up their daily work contact with active workers, frequently even move a long way off from their old working localities, and therefore their personal grievances are not so likely to breed group dissatisfaction leading to strikes. Consequently, it seems wrong to intimate that the grievances retired workers may have over claims for back pay are as likely to create strife productive of railroad strikes as the same grievances would, if entertained by active railroad workers. Certainly, the Court's questionable assumption to this effect supplies a very slim basis for departing from the clear language of the Act.

---

[4] *Brotherhood of Railway Clerks* v. *Railway Express Agency, Inc.*, 238 F. 2d 181; *Dahlberg* v. *Pittsburgh & L. E. R. Co.*, 138 F. 2d 121.

But if external considerations are to be used to interpret the statute, I think that the "lop-sided" effect courts have given to the Act's provisions for review of Board awards furnishes a very weighty reason for excluding retired employees from the exclusive jurisdiction of the Board. The Act provides that either a railroad worker or an employee can invoke the compulsory jurisdiction of the Adjustment Board.[5] Section 3 First (m) states that "awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award."[6] As construed, this provision prohibits an employee from seeking review of an adverse Board ruling in the courts.[7] And courts, determining that a Board denial of an employee's money claim is not a "money award" falling within the exception of § 3 First (m), have refused workers a judicial trial of their money claims against the railway after these have been rejected by the Board.[8] Today's decision in *Union Pacific R. Co.* v. *Price, post,* p. 601, appears to adopt this position. In contrast, however, a railroad may obtain a trial substantially *de novo* of any award adverse to it. For, under § 3 First (p)

---

[5] We recently held, over the vigorous protest of the railroad workers, that this jurisdiction is not only compulsory, but that a union can be enjoined from striking while the Board's jurisdiction is being exercised. *Brotherhood of Railroad Trainmen* v. *Chicago River & I. R. Co.,* 353 U. S. 30.

[6] 48 Stat. 1191, 45 U. S. C. § 153 First (m).

[7] See, *e. g.,* note 8, *infra.* Courts have intimated, however, that review of Board rulings adverse to the employee is permissible to the extent of insuring that the employee was not deprived of procedural rights protected by due process. *Ellerd* v. *Southern Pacific R. Co.,* 241 F. 2d 541; *Barnett* v. *Pennsylvania-Reading Seashore Lines,* 245 F. 2d 579.

[8] *E. g., Reynolds* v. *Denver & R. G. W. R. Co.,* 174 F. 2d 673; *Parker* v. *Illinois Central R. Co.,* 108 F. Supp. 186; *Ramsey* v. *Chesapeake & O. R. Co.,* 75 F. Supp. 740.

of the Act, if a carrier does not voluntarily comply with the Board's award, including wage awards for money damages, a wage earner can enforce the Board's order only by bringing, in a United States District Court, a suit which "shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated . . . ." [9]

Construed this way, the Act creates a glaring inequality of treatment between workers and railroads. After denial by the Adjustment Board, workers can get no judicial trial of their claims; railroads, however, can get precisely the same kind of trial they would have were there no Adjustment Board, except that the Board's findings constitute prima facie evidence in the case. For the reasons stated by MR. JUSTICE DOUGLAS in his dissent in *Price,* I think the Railway Labor Act should be construed to grant a railroad employee the same kind of redetermination by judge and jury of a Board order denying him a "money award" that the Act affords a railroad for a money award against it. The Court rejected this view in *Price.* The unfairness of the discriminatory procedure there upheld seems manifest to me. In my judgment, it is bound to incite the kind of bitter resentment among railroad workers which will produce discord and strikes interrupting the free flow of commerce and creating the very evil Congress sought to avoid by this Act. These reasons seem to me to provide compelling arguments against judicial expansion of the Act to retired railroad

---

[9] 48 Stat. 1192, 45 U. S. C. § 153 First (p).

The comparable provision in the Interstate Commerce Act has been construed to give very limited effect to the Board's findings in such a suit. *Meeker* v. *Lehigh Valley R. Co.,* 236 U. S. 412, 430; *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, 435. See also, *Dahlberg* v. *Pittsburgh & L. E. R. Co.,* 138 F. 2d 121.

workers plainly not covered by its language. Since the Court refuses to construe the Act to exclude such workers, however, I am forced to reach and consider the constitutional contentions raised by respondent.

## II.

Respondent argues that giving the Adjustment Board jurisdiction to make a "final and binding" determination of his wage claim deprives him of a jury trial in violation of the Seventh Amendment since wage disputes were "Suits at common law . . . ." [10] His contention is all the more serious where, as here, he is *compelled* to submit his claim to the Board and—as I understand the Court's holding here and in *Price*—is never allowed to take it to the courts for trial. In a comparable situation, Congress amended the reparation provisions of the Interstate Commerce Act for the specific purpose of avoiding constitutional difficulties by guaranteeing a railroad a full jury trial of money claims against it.[11] Significantly, § 3 First (p) of the Railway Labor Act, which provides the kind of court trial a railway can get before an award

---

[10] "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U. S. Const., Amend. VII.

[11] See *Lehigh Valley R. Co.* v. *Clark,* 207 F. 717; *Western New York & P. R. Co.* v. *Penn Refining Co.,* 137 F. 343, 349–350. See also *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, 444, 454–455 (dissenting opinion); *Councill* v. *Western & A. R. Co.,* 1 I. C. C. 339, 344–345; *Heck* v. *East Tennessee, V. & G. R. Co.,* 1 I. C. C. 495, 502. And in his dissent in *Union Pacific R. Co.* v. *Price, post,* p. 617, MR. JUSTICE DOUGLAS calls attention to the fact that the provisions of the Interstate Commerce Act have been construed, in *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, to provide for review of Commission reparation orders by shippers as well as by the railways.

against it can be enforced, is copied substantially verbatim from § 16 (2) of the amended Commerce Act.[12] That section (§ 16 (2)) had been construed by this Court long before the Railway Labor Act was passed so as to assure that it did not "abridge the right of trial by jury or take away any of its incidents." *Meeker* v. *Lehigh Valley R. Co.*, 236 U. S. 412, 430. It is hard for me to believe that Congress enacted the Railway Labor Act on the assumption that a railroad worker is any less entitled to a jury trial under the Constitution than is a railroad. And I would construe the Act on the basis that Congress believed both are entitled to such a trial. See *Union Pacific R. Co.* v. *Price, post,* p. 617 (dissenting opinion) decided today. Instead the Court in *Price.* rejects this construction, from which it must follow that respondent here is deprived of a jury trial, although the railroad can get one.

It would surely not be easy to uphold the constitutionality of a procedure which takes away from both parties to a wage dispute their ancient common-law right

---

[12] Section 3 First (p) of the Railway Labor Act reads in part: "Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated . . . ." 48 Stat. 1192, 45 U. S. C. § 153 First (p).

Section 16 (2) of the Interstate Commerce Act reads in part: "Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated." 34 Stat. 590, as amended, 49 U. S. C. § 16 (2).

"Since both Acts [Interstate Commerce Act and Railway Labor Act] came out of the same Congressional Committees one finds, naturally enough, that the provisions for enforcement and review of the Adjustment Board's awards were based on those for reparation orders by the Interstate Commerce Commission." *Elgin, J. & E. R. Co.* v. *Burley,* 325 U. S. 711, 749, 760 (dissenting opinion).

to a trial by court and jury.[13]   It should be impossible to uphold it when, as here, the procedure grants both parties an administrative hearing and then gives one of them a second chance before a judge and jury while denying it to the other.   Such an unequal procedure cannot be a fair trial since it gives one side a far better chance to win than the other.  Analogous practices in both criminal and civil cases have been consistently struck down by this and many other courts.[14]   Yet today the Court upholds this

---

[13] See 3 Blackstone Commentaries (15th ed. 1809) 162; 2 *id.*, at 442.

If an employee can be compelled to submit his wage claim to the Adjustment Board for final determination, there would seem to be no reason, despite the clear mandate of the Seventh Amendment, why' he could not also be compelled to submit common-law tort claims for negligent injury to an administrative or semi-administrative board.  Cf. *Barnett* v. *Pennsylvania-Reading Seashore Lines,* 245 F. 2d 579 (Board adjudication of contract action between railroad and injured railroad worker who claimed that he had been given contract of employment for life in settlement of prior negligent injury suit held to preclude court suit by employee).

[14] *E. g., Burns* v. *Ohio, ante,* p. 252 (state required to allow indigent defendant to appeal *in forma pauperis* from criminal conviction where appeal as of right allowed other defendants); *Griffin* v. *Illinois,* 351 U. S. 12 (same); *Spartanburg* v. *Cudd,* 132 S. C. 264, 128 S. E. 360 (right to jury redetermination of administrative award in condemnation suit must be allowed municipality if permitted to property owner); *Georgia Power Co.* v. *Brooks,* 207 Ga. 406, 62 S. E. 2d 183 (statute allowing one party to a condemnation valuation suit to introduce evidence of "similar sales" while other party is not, held invalid); *People* v. *Sholem,* 238 Ill. 203, 87 N. E. 390 (appeal from administrative determination of valuation of an estate for tax purposes must be allowed State if allowed other party); *Hecker* v. *Illinois Central R. Co.,* 231 Ill. 574, 83 N. E. 456 (statute providing for state supreme court review of facts after trial court's findings reversed without grant of new trial by intermediate appellate court, but denying such review if trial court's findings upheld, found invalid).

It is not surprising in view of this long history that courts and judges have questioned the constitutionality of compelling railroad workers to submit disputes to the Adjustment Board while denying

procedure without so much as discussing it. It does this although I can hardly think of a case where discrimination between litigants is less justified. Indeed, the only "justification" that has been attempted is that at the time the Railway Labor Act was passed certain representatives of the Railroad Brotherhoods were willing to forego their right to trial by judge and jury in exchange for certain benefits the law allegedly gave them. See *Union Pacific R. Co.* v. *Price, post,* p. 601. Taken as a whole I do not read the legislative history of the law as supporting any such concession by the unions. But even if it did, I would not be able to uphold the procedure here involved. For, assuming that an individual can contract away his constitutional right to an equal trial, and assuming additionally the still more doubtful proposition that representatives of an organization can, by contract, estop its members from claiming equal treatment in the courts in cases or controversies arising thereafter, I cannot agree that the statements of some union leaders to Congress when it enacted this law can be taken to have such an effect. A fair trial is too valuable a safeguard of our liberty for us to allow it to be so easily discarded. I would hold that respondent has a right to jury trial equal to that accorded the railroad, and that his constitutional contention is well taken.

For all these reasons I would affirm the judgment of the Court of Appeals.

---

them the same trial by jury which is allowed a railroad. See *Washington Terminal Co.* v. *Boswell,* 75 U. S. App. D. C. 1, 11, 124 F. 2d 235, 245, aff'd by an equally divided Court, 319 U. S. 732; *Barnett* v. *Pennsylvania-Reading Seashore Lines,* 245 F. 2d 579, 581. See also *United States* v. *Interstate Commerce Comm'n,* 337 U. S. 426, 444, 459 (dissenting opinion); *Elgin, J. & E. R. Co.* v. *Burley,* 325 U. S. 711, 719.