Frank MUNHOLLON, 9902 Woodland Avenue, Cleveland, Ohio, Plaintiff,

v.

PENNSYLVANIA RAILROAD, a Railroad corporation, Midland Building, Cleveland, Ohio, Defendant.

Civ. No. 34533.

United States District Court
N. D. Ohio,
Eastern Division.
Jan. 27, 1960.

A. R. Roman, Cleveland, Ohio, for plaintiff.

Charles F. Clarke, Jr., Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

KALBFLEISCH, District Judge.

The plaintiff began his action by filing a petition in the Court of Common Pleas of Cuyahoga County, Case No. 709506, and upon petition of the defendant the case was removed to this court.

The plaintiff alleges that the defendant is a railroad corporation owning and operating certain railroads throughout the State of Ohio and the United States, dealing in both an interstate and intrastate business, and that the defendant operates certain railroad yards throughout the City of Cleveland. This allegation is admitted to be true by the defendant.

Plaintiff further alleges that he was employed and did work for the defendant under the terms and conditions of a collective bargaining agreement entered into between the defendant and the Brotherhood of Locomotive Firemen and Enginemen, of which he was a member; that, at all times at issue herein, the plaintiff was employed by the defendant under the terms and conditions of said agreement and, more specifically, under the terms and conditions of Regulation No. 8, and sets forth in his petition subsections A through J of a regulation called "8-A-1" as shown in joint exhibit J-7. The defendant admits that plaintiff has been an employee of defendant at all times alleged in the plaintiff's petition and admits that since March 1, 1941, there has been an agreement in writing, from time to time amended, between the defendant and the Brotherhood of Locomotive Firemen and Enginemen, representing employees of defendant, and defendant further admits the existence of the terms and conditions of Regulation No. 8 contained in subsections A through J quoted in plaintiff's petition.

The plaintiff alleges that on July 3, 1916, he was employed by the defendant, and in 1920 he was promoted to an engineer and as engineer he did operate trains in and about the yards and local stations of the defendant; that approximately in 1946 the plaintiff was employed by the defendant only as a fireman; that in July 1948 he was employed by the defendant under the provisions of Regulation "8-A-1" as a fireman in the yards at East 33rd Street and St. Clair Avenue, up to and including the month of October 1950. The defendant admits plaintiff was employed on July 3, 1916,

and was promoted in 1920 as an engineer, that on February 7, 1935, plaintiff was confined to yard firing because of his physical condition, that on November 9, 1938, plaintiff was again confined to yard firing, and that in June 1940 plaintiff, as a result of further physical examinations, was restricted to work as a fireman and given medical examinations every three months until August 1943, and thereafter plaintiff was examined every six months. I find that these admissions by the defendant are established by a preponderance of the evidence. Defendant says further than on April 16, 1947, plaintiff was found physically incapable of performing work as an engineman because of his physical condition, and that as of June 4, 1947, plaintiff was placed on a position under the provisions of Regulation "8-A-1" (Defendant's exhibit C states that the agreement was made May 29, 1947.); and that on February 2, 1948, plaintiff was again examined by a physician who reported that plaintiff had a moderate vasculo-sclerosis and paranoia and recommended that plaintiff be reported off duty for rest and treatment; and that on July 15, 1948, plaintiff was again examined and approved for employment pursuant to Regulation "8-A-1" under which provisions plaintiff returned to duty on July 26, 1948, as a yard fireman under the amended "8-A-1," which as amended became effective July 21, 1948. I find from the evidence that the foregoing allegations of the defendant are established by a preponderance of the evidence.

Plaintiff further alleges that on or about the 16th of October, 1950, the defendant, through its duly authorized agents, did without cause deprive the plaintiff of the benefits, terms and conditions of his employment, under and by virtue of the agreements hereinabove mentioned, and has continuously since October 16, 1950, refused to assign to plaintiff any position to which he was entitled. The defendant admits that on October 16, 1950, following a medical examination on October 13, 1950, and as a result of the recommendations of the medical examiner and the chief medical examiner, plaintiff was reported disabled for a period of rest and treatment, and that his return to duty should depend upon his response to rest and treatment; and defendant says that plaintiff acknowledged his disability on defendant's Form R. D. 5; and defendant further says that on April 17, 1951, plaintiff was again examined by defendant's doctors and found unfit to return to duty. I find that the allegations and admissions of the defendant as stated in this paragraph are established by a preponderance of the evidence.

Plaintiff further alleges that the defendant directed this plaintiff to take an inactive status called "R. D.," informing plaintiff that he would be permitted to return to work within the next week or two; that immediately following he did make application to return to work, by executing the necessary time slips, and the defendant notified the plaintiff that he was properly held out of service by the Medical Department. The defendant admits that following a medical finding on October 13, 1950, plaintiff signed a Form R. D. 5, in which plaintiff reported himself off duty because of disability, but alleges that the execution by the plaintiff of Form R. D. 5 was voluntary and that thereafter, on April 17, 1951, plaintiff was examined by defendant's doctors and found unfit to return to duty because of physical disability. This admission and allegation of the defendant is established by a preponderance of the evidence. However, the evidence (defendant's exhibits L, M, N, O and P) clearly establishes that time slips were filed by the plaintiff and denied by the defendant for the following reason: "You were properly held out of the service by the Medical Department."

Plaintiff alleges that he was placed on said "R. D." status and that he received certain sick benefits of $45 per month for a period of eleven months, and this allegation is admitted to be true by the defendant.

Plaintiff alleges that in May 1951 he secured employment elsewhere and that he informed the defendant thereof, and that he had taken a physical examination, which he passed, and was permitted to work in employment other than with the defendant. The plaintiff says further that though at one time he was disabled such disability became removed. Plaintiff further alleges that ever since October 16, 1950, he has been physically able to perform the duties of the employment under the provisions of "8-A-1." The joint exhibits J through J-6 are correspondence between the defendant, the plaintiff, and the Local Chairman of the Brotherhood of Locomotive Firemen and Enginemen between the dates of February 7, 1951, and November 10, 1952. During this period the plaintiff was prosecuting "time claims" (defendant's exhibits L, M, N, O and P) and these "time claims" were being denied by the defendant, the basis of said denials being medical reports of the defendant's doctors as to the physical unfitness of the plaintiff. Joint exhibit J-8, employment rosters prepared by the defendant in the due course of business, reveals that plaintiff was continued on said rosters as an employee. From a consideration of joint exhibits J through J-6 and J-8, I find the parties hereto and the Brotherhood of Locomotive Firemen and Enginemen have at all times at issue herein considered the plaintiff an employee of the defendant, although the defendant was maintaining that the plaintiff was physically unfit to work and the plaintiff was contending he was not disabled. Joint exhibit J-7 is the Collective Bargaining Agreement between the defendant and its employees, represented by the Brotherhood of Locomotive Firemen and Enginemen. It is admitted by both parties that Regulation No. 8 and its subsections apply to the facts in this case; in fact, the plaintiff relies upon his allegation that he was an employee under Regulation No. 8 and computes his claim for damages based upon that allegation.

The foregoing extensive references to the admissions and allegations of the parties are of vital importance because, following the opening statement, counsel for the plaintiff offered into evidence plaintiff's exhibits 1 and 2 and joint exhibits J through J-8 and then rested plaintiff's case. Plaintiff's exhibit 1 is a report by Dr. Victor G. deWolfe, dated June 3, 1952. Plaintiff's exhibit 2 is a letter dated September 26, 1952, written by plaintiff and addressed to Mr. G. L. Salem, Local Chairman, Brotherhood of Firemen and Enginemen. The Mr. Montgomery referred to in this exhibit is apparently J. W. Montgomery, Local Chairman, B. of L. E., Cleveland, Ohio, whose signature appears on defendant's exhibit C.

Plaintiff's counsel apparently assumed that the admissions in the defendant's answer, together with plaintiff's exhibits 1 and 2 and the joint exhibits J through J-8, suffice to sustain the burden of proof necessary to entitle the plaintiff to recover a judgment for $14,440.11, said amount being the difference between the amount the plaintiff would have received had he been permitted to work for the defendant from October 16, 1950 to June 5, 1958, less the amount the plaintiff did receive from other employers during said period. Those two amounts are reported in exhibits V and W.

The plaintiff having rested, the defendant proceeded with its defense by cross-examination of the plaintiff, the testimony of officials of the Brotherhood of Locomotive Firemen and Enginemen, and of employees of the defendant, and offered defendant's exhibits A through U. From the evidence offered by the plaintiff and the defendant, I find that on October 16, 1950, the plaintiff was an employee of the defendant under Regulation No. 8 of the Collective Bargaining Agreement (joint exhibit J-7), as a result of an agreement entered into between the Brotherhood of Locomotive Firemen and Enginemen, representing the plaintiff, and the defendant (defendant's exhibit G). I further find that on

said date the defendant, acting upon a report from its Medical Department, removed the plaintiff from his employment due to his physical condition, said removal to remain effective until it was determined that plaintiff's physical condition would permit him to return to work. The determination as to the plaintiff's physical fitness to return to work would depend upon an examination and favorable report of the Medical Department of the defendant, or a similar favorable report as to plaintiff's physical fitness by a Board of Doctors under the provisions of Regulation 8-B-1 as contained in joint exhibit J-7.

It is conceded by both parties that subsequent to October 16, 1950, the Medical Department of the defendant examined the plaintiff on different occasions during the period at issue here, and on each occasion reported the plaintiff physically unfit to return to work.

Coming now to a consideration of the second method by which the plaintiff could have determined his right to return to work, I find the plaintiff requested the Local Chairman of the Brotherhood of Locomotive Firemen and Enginemen to proceed under Regulation 8-B-1. I find, further, that there were discussions and correspondence between the Brotherhood of Locomotive Firemen and Enginemen and the defendant on this subject, and I find that these discussions and correspondence ended with a letter dated November 10, 1952, addressed to plaintiff and signed by Elgin Adams, General Chairman of the Brotherhood of Locomotive Firemen and Enginemen (joint exhibit J-6). I call counsel's attention to a reference to Regulation 8-B-1 in defendant's exhibit D and joint exhibit J. Giving full consideration to the exhibits related to this subject of compliance with Regulation 8-B-1 and to the testimony of Samuel C. Phillips, Paul N. Mansfield and Harry F. Leonard on the same subject, I find that Regulation 8-B-1 in joint exhibit J-7 was never invoked or complied with.

It is the contention of the plaintiff that the failure on the part of the Brotherhood of Locomotive Firemen and Enginemen and the defendant to invoke and comply with the provisions of Regulation 8-B-1, as contained in joint exhibit J-7, amounted to a waiver by the defendant of the right to require the plaintiff to have an examination as is provided in Regulation 8-B-1; it is further contended by the plaintiff that plaintiff performed all the conditions on his part required to be performed, except the compliance with Regulation 8-B-1, and he says he is excused of non-compliance with Regulation 8-B-1 by reason of the conduct of the defendant. I find no evidence to support these contentions of the plaintiff. This finding goes to the very heart of the plaintiff's case. I do not feel that it is proper for the Court to comment upon what the plaintiff should have done after receiving Chairman Elgin Adams's letter (joint exhibit J-6), as I do find from the evidence that the defendant consistently relied upon the report of its Medical Department regarding the health of the plaintiff, and the defendant offered to cooperate to invoke and comply with Regulation 8-B-1 contained in joint exhibit J-7.

The evidence having clearly shown that the plaintiff and the defendant considered and regarded the plaintiff as an employee throughout the period at issue herein, and that he was not discharged, the only remaining question is: Has the plaintiff shown by a preponderance of the evidence that he was wrongfully deprived of his employment from October 16, 1950 to June 8, 1958?

It is universally understood, and so well established in law as to require no citation, that an employer, apart from contract or statute, cannot be compelled to refrain from discharging any or all employees. An employer's right to discharge an employee without incurring liability therefor depends either upon the existence of legal justification for the discharge or the nature of the contract of employment. The right of an employer to "mark off" an employee, as that term has been explained in the testimony herein, or to suspend an em-

ployee's right to work because of physical unfitness is no less restricted than the employer's right to discharge.

In this case we have the conceded facts, first, that the plaintiff was and is a member of the Brotherhood of Locomotive Firemen and Enginemen; second, that by affirmative consent and by the terms of the constitution of said Brotherhood, Article 15, Section 16(b), as contained in defendant's exhibit U, the plaintiff authorized the Brotherhood to act as his agent in the matter under consideration in this case; third, that the defendant removed the plaintiff from his employment for the reason that defendant's Medical Department reported the plaintiff physically unfit to work; fourth, that the plaintiff protested this action by the defendant and prosecuted "time claims" as an employee, which "time claims" were denied by the defendant; fifth, that the plaintiff requested the Brotherhood to initiate an examination by a Board of Doctors, under the provisions of Regulation 8-B-1 of the Collective Bargaining Agreement, which request by the plaintiff was declined by the Brotherhood; sixth, that throughout the period at issue herein the plaintiff accepted sick benefits, was retained as an employee on the duty roster of the defendant, and continued to receive railway passes; seventh, that the plaintiff performed no services as an employee of the defendant during the period at issue herein, being held out of service for medical reasons; and, eighth, that the Medical Department of the defendant did report that the plaintiff was physically unfit for his employment during the period at issue.

In addition to the above conceded facts, the Court has found upon the disputed facts that the provisions of Regulation 8-B-1 of the Collective Bargaining Agreement (joint exhibit J-7) were not complied with, and the evidence failed to prove that such non-compliance constituted a waiver by the defendant of the requirement to comply with Regulation 8-B-1.

From the above findings of fact, it is obvious that the doctrine of law declared in the case of Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, and the law expressed in Woodward Iron Co. v. Ware, 5 Cir., 261 F.2d 138, 140, and the law as expressed in the case of United Protective Workers of America, Local No. 2 v. Ford Motor Co., 7 Cir., 223 F.2d 49, 48 A.L.R.2d 1285, does not apply to this case. It is my conclusion that the law as declared in the case of Pennsylvania R. Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422, and in the case of Hundley v. Illinois Central R. Co., 6 Cir., 272 F.2d 752 is controlling, since I have found the plaintiff was not discharged or wrongfully deprived of his employment.

Judgment is hereby rendered in favor of the defendant and against the plaintiff, and costs are assessed against the plaintiff. This Opinion and Memorandum is adopted as findings of fact and conclusions of law.