521 F.2d 208
 90 L.R.R.M. (BNA) 2916, 80 Lab.Cas. P 11,959
 Ota D. THOMAS et al., Plaintiffs-Appellants,
v.
ILLINOIS CENTRAL RAILROAD CO. and Brotherhood of Railway,
Airline & SteamshipClerks, et al., Defendants-Appellees.
Ota D. THOMAS et al., Plaintiffs-Appellants,
v.
BROTHERHOOD OF RAILWAY, AIRLINE & STEAMSHIP CLERKS, et al.,
Defendants-Appellees.
 Nos. 74-2561, 74-3518.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 20, 1975.
 
 Walter F. Gemeinhardt, New Orleans, La., for plaintiffs-appellants in both cases.
 C. Paul Barker, New Orleans, La., for Bro. of Railway, and others in both cases.
 H. Martin Hunley, Jr., Victor H. Hess, Jr., New Orleans, La., Martin W. Fingerhut, Chicago, Ill., for Ill. Central RR. Co. in both cases.
 Maurice S. Cazaubon, Jr., New Orleans, La., for Bro. of Railway, and others in 74-3518.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, Chief Judge, and WISDOM and COLEMAN, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 The plaintiffs-appellants in this case are forty-one former employees of the Illinois Central Hospital Association whose jobs were terminated when the hospital site in New Orleans, Louisiana, was sold to the Dome Stadium Commission in 1970. The plaintiffs claimed entitlement to certain separation benefits granted under an agreement negotiated in 1965 ('65 Agreement) between most of the railroads of the United States, including the defendant railroad, Illinois Central (the Railroad) and five railway labor organizations, including the International of the defendant Union, the Brotherhood of Railway, Airline Steamship Clerks (BRAC). The Railroad denied liability under the '65 Agreement, noting that the Hospital Association was not a signatory to it and that the Hospital employees had never been considered within its coverage. BRAC too denied that the plaintiffs-appellants were covered by the '65 Agreement, arguing that the only applicable agreement negotiated by BRAC on behalf of the hospital employees was a 1967 Agreement with the Hospital ('67 Agreement), specifically relieving the Hospital of any obligation to its employees in the event the facility ceased operations.
 
 
 2
 The plaintiffs sued in the district court for $52.5 million, alleging wrongful discharge and denial of separation benefits by the Railroad, collusion by the Railroad and BRAC to deprive the plaintiffs of benefits due under the '65 Agreement, and breach of duty of fair representation by BRAC in negotiating the '67 Agreement. The defendants moved for summary judgment for lack of jurisdiction, because of the plaintiffs' failure to invoke and exhaust their contractual and administrative remedies. On September 20, 1972, the district court stayed further proceedings pending the parties' submission of the matter to arbitration, under § 3 of the Railway Labor Act and Article VII of the '65 Agreement.[1]
 
 
 3
 On January 11, the Special Board of Adjustment No. 605 rendered its decision. After determining the Board's jurisdiction over the dispute, the neutral referee ruled that the plaintiffs were not covered under the '65 Agreement negotiated between the Railroad and the Union and denied their claims. The Board found that the plaintiffs were not "protected employees" of the Railroad within the meaning of the '65 Agreement, and had not been represented by BRAC in the negotiations leading to it. The referee further found that there was no evidence to support the charges of fraud, collusion, or artifice on the part of the defendants to deprive the plaintiffs of any rights.
 
 
 4
 The Railroad renewed its motion for summary judgment when the case returned to the district court on May 1, 1974. The court, having determined "that the findings of the Board are neither arbitrary nor capricious or in violation of the Due Process rights of plaintiffs," granted the motion. On June 12, 1974, the court granted the Union's motion for summary judgment, relying again on the opinion of the Board. The plaintiffs then brought this appeal.
 
 I.
 Facts
 
 5
 The complex facts of this case require some elaboration. The Illinois Central Hospital Association, formerly the Illinois Central Hospital Department, was established in 1912 to provide hospital and medical care for the employees of the Illinois Central Railroad Company. The Hospital was supported by dues paid by the employees of the Railroad and was managed by elected dues-paying members, who used the funds to run the Hospital and to pay the salaries of the Hospital employees.
 
 
 6
 In 1955, BRAC first acquired recognition as the official bargaining agent for the clerical staff of the Hospital,[2] and a contract was negotiated between the Hospital and BRAC on behalf of the member hospital employees.[3] Since then, various agreements have been negotiated between the Hospital and BRAC.[4] In each of these later negotiations, BRAC dealt directly with the Hospital, as an entity separate and distinct from the Railroad. Illinois Central Railroad neither signed nor participated in the negotiations leading to the '55 Agreement or any of the later agreements negotiated by BRAC on behalf of the Hospital employees.
 
 
 7
 More than 20 years earlier, in 1922, BRAC negotiated its first collective bargaining agreement with the Railroad on behalf of the class or craft of railroad employees known as clerks.[5] Although the Hospital had been in existence for 10 years at the time of the '22 Agreement, it did not take part in the negotiations, did not sign the agreement, and was not a party to any of the later agreements negotiated by BRAC with the Railroad on behalf of the Railroad clerks.[6] Nor did BRAC purport to represent the hospital employees in the '22 Agreement. In fact, it was not until 1955 that the Chief Surgeon of the Hospital recognized BRAC as the official bargaining representative of the Hospital employees, thus entitling BRAC to represent them in collective bargaining negotiations with the Hospital. Since 1922, in all of its negotiations on behalf of the Railroad clerks, BRAC has dealt directly with the Railroad; since 1955, in all of its negotiations on behalf of the Hospital employees, BRAC has dealt directly with the Hospital. There has never been any suggestion that agreements negotiated between the Hospital and BRAC on behalf of Hospital employees covered employees of the Railroad represented by BRAC in agreements with Illinois Central Railroad.
 
 
 8
 In 1965, a national mediation agreement was concluded between various railroad carriers throughout the United States, including the Illinois Central Railroad and various railway labor organizations, including BRAC. The agreement provided certain benefits to employees within its coverage. Article I provided that protected employees in active service as of 1964 would be retained "until retired, discharged for cause, or otherwise removed by natural attrition". Article IV provided that protected employees would "not be placed in a worse position with respect to compensation" than the normal rate of compensation existing in 1964. Article V provided for certain moving expenses and separation allowances. Article VI, applicable to mergers and consolidations, incorporated some of the protections of the Washington Job Protection Agreement of 1936. Article VII provided that any dispute concerning the agreement could be referred to a disputes committee. The Hospital Association did not participate in the negotiations leading to the '65 Agreement and was not a signatory to the agreement.
 
 
 9
 In 1967 the Hospital did conclude an agreement with BRAC, the latter as representative of the Hospital workers, to provide for stabilization of employment. Article V specifically stated that the agreement was to "be construed as an Agreement by the said Illinois Central Hospital Association and its said employees represented by (BRAC)".[7] During the four years of negotiations leading to the '67 Agreement, BRAC referred to the '65 Agreement in which BRAC had represented the Railroad clerks, and urged that the employer-Hospital, as an entity established and maintained by the Railroad employees, grant to its employees protections similar to those granted the Railroad employees by their employer-railroads in the '65 Agreement. The resulting Agreement of 1967 did protect certain employees against reductions in the Hospital work force. Article V, however, specifically relieved the employer-Hospital of any continuing liability for protected employees in the event the Hospital discontinued operations. When the Hospital was closed following its sale to the Dome Stadium Commission in 1970, the Hospital employees, including these plaintiffs, were notified of their termination. Under Article V(a), all benefits provided under the '67 Agreement were cancelled.
 
 II.
 Plaintiffs-Appellants Claims
 
 10
 The plaintiffs-appellants claim entitlement to benefits under the '65 Agreement as employees of the Railroad, through its "subsidiary", the Hospital, and as members of BRAC represented in the negotiations leading to the '65 Agreement. The district court refused to pass on these issues in the first instance, referring the case instead to arbitration by a disputes committee or Special Board as provided in the '65 Agreement. The appellants challenge not only the Special Board's award and the district court's refusal to overturn that award, but the very jurisdiction of the Board and thus the correctness of the court's order to submit the case to arbitration. This Court must, therefore, decide both the jurisdiction of the Special Board and the correctness of the district court's refusal to upset the referee's award.
 
 
 11
 A. Jurisdiction of the Disputes Committee.
 
 
 12
 The appellants argue that the disputes committee provided for in the '65 Agreement was without jurisdiction to adjudicate the controversy for three reasons: (1) the individuals who initiated the action were not themselves signatories to the '65 Agreement and were thus without standing to invoke the disputes committee; (2) the Agreement makes no provisions for the submission of claims by individuals; (3) the neutral referee's ultimate determination that the '65 Agreement did not apply extinguishes any jurisdiction that Board might have had. All three arguments are without merit.
 
 
 13
 The '65 Agreement provides, Article VII, Section 1:
 
 
 14
 Any dispute involving the interpretation or application of any of the terms of this agreement, and not settled by the Carrier, may be referred by either party to the dispute, for a decision to a committee . . ."[8]
 
 
 15
 The agreement contains no reference to signatory parties and expressly confers on either party to the dispute the authority to submit the case to the Board. There is no question that the plaintiffs were parties to the dispute; they initiated it. Even if submission by a signatory party were required, however, the acquiescence of both the Union and the Railroad to the Board's jurisdiction is sufficient compliance with this requirement. Second, the agreement does not prohibit the submission of a dispute by individuals; in fact, the evidence established that in the past claims by individuals had been submitted to the Board and adjudicated. Finally, the Board's ultimate determination that the plaintiffs were not within the coverage of the '65 Agreement did not prevent their grievances from being cognizable by that tribunal. The jurisdiction of the Board was based on the source of the plaintiffs' claims, not on their resolution. Those claims were predicated on the terms of the '65 Agreement. That the plaintiffs were unsuccessful in pressing their claims does not remove the case from the ambit of disputes "involving the interpretation or application of any of the terms of the '65 Agreement". Thus the Board was entirely correct in finding that it had jurisdiction over the dispute, and the district court did not err in refusing to overturn that finding.
 
 
 16
 B. Correctness of the District Court's Refusal to Overturn the Award of the Board.
 
 
 17
 In Board of Railroad Trainmen v. Central of Georgia Ry., 5 Cir. 1969, 415 F.2d 403, 415, this Court stated the standard of review of arbitration awards under the Railway Labor Act as "whether the award . . . was so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator'." United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428. The agreement of 1965 itself provided that decisions rendered by a disputes committee invoked under Article VII, Section 1 "shall be final and binding upon the parties to the dispute". As the Supreme Court noted in United Steelworkers, supra, where standard arbitration clauses such as the one in question are included in the provisions of a collective bargaining agreement,
 
 
 18
 . . . plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. . . . (T)he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
 
 
 19
 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429.
 
 
 20
 We note this standard simply to emphasize that the district court need not have agreed with the neutral referee's findings to have sustained the decision of the Board. Similarly, this court need not agree with the Board's findings to affirm the district court's refusal to overturn the award. As it happens, we find no error in the Board's decision on the merits, and thus have no difficulty in affirming the decision of the court below.
 
 
 21
 As outlined earlier, the plaintiffs' claims are based on a characterization of their status as "employees of the Railroad", represented by BRAC, and therefore entitled to the protection of the '65 Agreement negotiated between BRAC and the Railroad. The Board found that regardless of their status as Railroad employees and regardless of the fact that they had been represented by BRAC before and after 1965 in agreements negotiated with the Hospital, they had not been represented in the negotiations with the Railroad leading to the '65 Agreement and were therefore not within its coverage. The neutral referee noted:
 
 
 22
 The most fundamental and elementary factor lacking in the arguments advanced by Claimants is the failure to accept the grasp (sic) of the functions of a bargaining unit. . . . (BRAC) has represented the clerical craft on this Carrier since 1922. The Agreements negotiated for this craft, within the bargaining units, had no impact on any other bargaining unit. Therefore, when a separate bargaining unit was recognized for the Hospital Association employees and an Agreement negotiated in 1955, the Hospital Association employees, for the first time, became covered employees. . . . Not under the Agreement previously negotiated for the Carrier bargaining unit, but rather under the Agreement for the Hospital Association bargaining unit. Even assuming, but not conceding that they were all employees of the Carrier nevertheless, they were insulated in separate bargaining units and governed by separate collective bargaining agreements.
 
 
 23
 The Board went on to find that even if the plaintiffs had been within the coverage of the 1965 Agreement, the facts leading to their discharge would not have entitled them to any of the benefits claimed under its terms. Even "protected employees" were not guaranteed continued employment against all contingencies. The '65 Agreement said nothing about employee protection in the event the Railroad ceased to operate; in fact, a previous award of the Board had held protective benefits of the '65 Agreement inapplicable to the complete cessation of a facility's operations.
 
 
 24
 The Board similarly rejected the plaintiffs' claims to benefits under the Washington Job Protection Agreement of 1936 (Washington Agreement),[9] either as a separate source of rights or as incorporated into the '65 Agreement. Section 1 of the Washington Agreement stated
 
 
 25
 (t)hat the fundamental scope and purpose of this agreement is to provide for allowances to defined employees affected by coordination as hereinafter defined, and it is the intent that the provisions of this agreement are to be restricted to those changes in employment in the Railroad Industry solely due to and resulting from such coordination. (emphasis supplied)
 
 
 26
 Article VI of the '65 Agreement, entitled "Application to Mergers, Consolidations, and Other Agreements", incorporated certain protections of the Washington Agreement. The plaintiffs contended that the merger of the Illinois Central Railroad with Gulf, Mobile and Ohio Railroad in 1971 constituted a "coordination" within the terms of the Washington Agreement, thus entitling them to the benefits of the Agreement. The Board found, however, that the merger was in no way related to the closing of the Hospital and the abolishment of the plaintiffs' jobs. They were not "employees affected by railroad 'coordinations' " and were thus not entitled to the protections of the Washington Agreement. Moreover, since the '65 Agreement did no more than incorporate the benefits of the Washington Agreement to situations in which it would otherwise have been applicable, the plaintiffs were not entitled to the benefits under Article VI of the '65 Agreement.[10]
 
 
 27
 Finally, the Board found no evidence to support the plaintiffs' charges of collusion and fraud by the Union and the Railroad and no evidence that BRAC had failed to represent the Hospital employees fairly in the negotiations leading to the '67 Agreement.
 
 
 28
 This Court finds the rulings of the Board, sustained by the district court, amply supported by the record. Without repeating the individual reasons for rejecting each of the asserted grounds for relief, we find, as the Board did, that the plaintiffs were never within the coverage of the '65 Agreement. Since 1922, the Hospital and the Railroad have bargained as separate and distinct employers in negotiating agreements with their employees. The Hospital has not been a signatory to the agreements negotiated on behalf of the Railroad clerks, including the '65 Agreement; the Railroad has not been a signatory to any of the agreements negotiated on behalf of the Hospital employees, including the '67 Agreement. BRAC's representation of the Railroad clerks dates from 1922; BRAC did not become the recognized bargaining agent for the Hospital employees until 1955. Since then, in all of its negotiations on behalf of the Hospital workers, BRAC has dealt solely with the Hospital; the wages and fringe benefits negotiated by BRAC on their behalf have been applied exclusively to them. The Railroad clerks represented by BRAC have never claimed nor been held entitled to benefits obtained by BRAC for the Hospital employees, and there appears to be no precedent holding Hospital workers entitled to benefits negotiated by BRAC on behalf of the Railroad clerks. Thus we find no reason to question the Board's determination that the '65 Agreement was inapplicable to these plaintiffs and no reason to upset the decision of the district court to uphold the Board's award on this ground.
 
 
 29
 Nor do we find, any more than the Board did, any evidence to support the charges of fraud, collusion, or artifice on the part of the defendants. Since the plaintiffs obtained no rights under the '65 Agreement, they cannot be heard to complain of the divestment of such rights. Moreover, as the Board noted, even the benefits of the '65 Agreement had been held inapplicable to job terminations occasioned by the complete cessation of a facility's operations. Finally, even if the '65 Agreement would have protected the plaintiffs against the closing of the Hospital, the mere fact that the '67 Agreement was less protective is not alone evidence of any fraud, collusion, or failure of BRAC to fairly represent the Hospital workers. In short, any finding of fraud, collusion, or dereliction of duty by BRAC would have required more than the unsupported allegations the plaintiffs assert.
 
 
 30
 The Board's determination of its own jurisdiction and its resolution of the merits was not subject to serious challenge. The district court was correct in refusing to overturn the Board's award and in granting the motions of the defendant Union and Railroad for summary judgment.
 
 
 31
 For the foregoing reasons the judgment below is affirmed.
 
 
 
 [1]
 The Railway Labor Act, 45 U.S.C.A. § 151 et seq. (1972), governs labor relations in the railroad and airline industries. Section 153 provides for a system of compulsory arbitration of employee grievances concerning interpretation and application of collective bargaining agreements. The Supreme Court has held such arbitration procedures to be mandatory for "minor disputes" such as the present one, arising out of rights embodied in agreements and claimed to have accrued in the past. Slocum v. Delaware, Lackawanna & Western R.R., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Pennsylvania R.R. v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422; Brotherhood of Locomotive Engineers v. Louisville & Nashville R.R., 1963, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172. Cases of wrongful discharge are no longer exceptions to this exhaustion of remedies requirement. Andrews v. Louisville & Nashville R.R., 1972, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95. The Railway Labor Act does provide, however, that special boards of adjustment, such as the one established under Article VII of the '65 Agreement, may have coextensive jurisdiction with the National Railway Adjustment Board, the statutory tribunal provided under the Act (45 U.S.C.A. § 153 Second). In fact, the National Railway Adjustment Board has recognized the validity of the disputes committee or special board established by the '65 Agreement and has deferred to the committee's jurisdiction by referring to it disputes involving the interpretation or application of the '65 Agreement
 
 
 [2]
 Rule 1 of the 1955 Agreement, extended its coverage not only to clerks and clerical workers, including accountants, cashiers, bookkeepers, receptionists, secretaries, stenographers, typists, commissary storekeepers, switchboard operators, and messengers, but also to elevator operators, laundry workers, maids, wall cleaners, cleaning women, porters, and others performing analogous services
 
 
 [3]
 Only eight of the forty-one plaintiffs-appellants are or were members of BRAC. They argue, however, that the Union has a duty fairly to represent both Union and non-Union employees. Since the Court finds that even the BRAC-member Hospital workers are not entitled to any of the claimed benefits under the terms of the '65 Agreement, we need not reach this issue
 
 
 [4]
 Wage agreements between the Hospital and BRAC as the bargaining representative of the member Hospital employees have been consummated on January 24, 1956, December 13, 1960, July 20, 1962, March 3, 1965, January 1, 1966, January 11, 1967, April 12, 1968, December 19, 1968, and July 21, 1971
 
 
 [5]
 BRAC's representation of the Railroad clerks actually began two years earlier, when it negotiated an agreement with the Director General of Railroads, United States Railroad Administration, effective January 1, 1920, covering employees of the Illinois Central Railroad working in the class or craft represented by BRAC
 
 
 [6]
 Revised agreements between the Railroad and BRAC as representative of the Railroad clerks have been entered into effective September 1, 1927, September 1, 1949, September 13, 1953, September 1, 1954, June 1, 1961, and September 1, 1967
 
 
 [7]
 Similar language appeared in agreements concluded between the Hospital and BRAC before and after 1967, as typified by Article V(a) of the April 12, 1968 Agreement:
 This agreement . . . shall be construed as a separate agreement by and on behalf of the Illinois Central Hospital Association and its employees represented by the organization signatory hereto . . . .
 See also Article IV(a) of the July 20, 1962 Agreement.
 
 
 [8]
 For statutory authorization for such a provision, see note 1, supra
 
 
 [9]
 The Washington Agreement of May, 1936, was an agreement entered into by 219 railroads, including the Illinois Central, and 21 railway labor organizations, including BRAC. For further discussion of the Agreement, see United States v. Lowden, 1939, 308 U.S. 225, 234, 60 S.Ct. 248, 253, 84 L.Ed. 208, 215; Brotherhood of Maintenances of Way Employees v. United States, 1961, 366 U.S. 169, 174, 81 S.Ct. 913, 915, 6 L.Ed.2d 206, 210, reh. den., 366 U.S. 935, 81 S.Ct. 1901, 6 L.Ed.2d 1247 (1961)
 
 
 [10]
 Although the referee failed to make specific findings on the issue, the Board was also apparently unpersuaded by the plaintiffs' claim of entitlement to lump sum separation benefits under Article V of the '65 Agreement. Article V's benefits applied only to "transfers or rearrangement of forces". Separation benefits were payable only to employees with fifteen or more years of service who elected to resign rather than be transferred. Employees with less than fifteen years of service were entitled only to moving expenses. The plaintiffs did not allege that all or any of them had been employed at the Hospital fifteen years or more, and since the provisions for moving expenses were clearly inapplicable, no rights could be claimed under this provision of the '65 Agreement