## DAHLBERG v. PITTSBURGH & L. E. R. CO. et al.

### SINGER v. SAME.

Nos. 8285, 8286.

Circuit Court of Appeals, Third Circuit.

Argued July 14, 1943.

Decided Sept. 30, 1943.

122

Sidney J. Watts, of Pittsburgh, Pa., for petitioners.

Thomas J. McBride, of Youngstown, Ohio, for respondent Railroad Yardmasters, etc.

John C. Bane, Jr., of Pittsburgh, Pa., for respondent Pittsburgh & L. E. R. Co.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge.

The appellants filed petitions in the District Court to enforce awards of the National Railroad Adjustment Board which gave each seniority rights in accordance with his claim. That Court, after hearing, held that the Board's interpretation of the contract which governed their rights was erroneous, and these appeals are from the Court's order dismissing the complaints.

We may say at once that we are of the opinion that the Court was clearly right in holding that Rule 6(a) of the contract, which provides that yardmasters will be placed upon the seniority registry "as of the date last regularly assigned to such positions," is controlling, means what it says and does not mean "first regularly assigned;" and that Rule 6(e), to the effect that yardmasters "laid off on account of reduction of force will retain their place on the seniority roster," refers to lay-offs occurring after the date of the contract

(Aug. 2, 1934). The Board gave a retroactive effect to the latter clause, thus abrogating the former as it affected the appellants. The service of both appellants as yardmasters had been broken by lay-offs prior to the date of the contract, and the result of the Board's ruling was to award them seniority rights, not as of their last regular assignment but as of much earlier ones.

The appellants now argue (although the point was not raised before the District Court) that under the Railway Labor Act of 1934, 45 U.S.C.A. § 151 et seq., the Court was without jurisdiction to review the award on its merits, its function being merely to decide the single question whether the award was within the statutory or constitutional authority of the Board. Their contention is based exclusively upon a provision of Sec. 3(m) of the Act, that the awards of the Board "shall be final and binding upon both parties to the dispute."

In construing a statute, words may not be taken out of their context and endowed with an absolute quality nor may the plan of the entire statute be disregarded in interpreting any single provision. Obviously the expression "final and binding" has its limitations. Even the appellants concede that the award is neither so final that it may not be set aside by the Court if the Board acted beyond its statutory authority nor so binding that the carrier can be compelled to obey it without the aid of the Court in enforcement proceedings. We think that the general plan of the statute clearly discloses an intention to use the words in the sense that the award is the definitive act of a mediative agency, binding until and unless it is set aside in the manner prescribed, and that it was intended that the Court should exercise broader powers than merely directing coercive process to issue if satisfied that the proceeding was authorized by law.

The Act provides that the suit for enforcement shall "proceed in all respects as other civil suits" except that the findings and award "shall be prima facie evidence of the facts therein stated." Section 3(p), 45 U.S.C.A. § 153(p). These procedural directions are particularly appropriate to a trial on the merits of disputed issues of both fact and law; less so to a mere examination of the scope of the Board's authority.

If the Act should be interpreted as precluding consideration of the merits by the Court, serious doubts as to its constitutionality would arise. Such interpretation would amount to vesting the Board with full judicial power; and, as was said in a similar but other connection in the dissenting opinion in Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F. 2d 235, 276, "There can be no valid delegation of governmental power to nongovernmental agencies. Carter v. Carter Coal Co., 1936, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. The Adjustment Board, consisting of bi-partisan groups paid by and set up to represent the employees and carriers respectively, is not a governmental agency."

If it could be assumed that the Adjustment Board was a governmental agency still other doubts as to the Act's constitutionality would be present, for example, the question whether there is such a lack of safeguards in the procedure before the Board as to amount to a denial of due process, there being no Court review of the merits. This point was dealt with by Justice Rutledge in the Washington Terminal Co. v. Boswell, supra, as follows: "Much of the argument has been built around the alleged inadequacy of the administrative proceeding as complying with the requirements of due process, particularly in the absence of formal pleadings, opportunity for examining witnesses and cross examining them, opportunity for representation by counsel and for oral argument. These things would be important, if the Board's decisions were final in the legal sense and for purposes of enforcement, as to either facts or law. But, as has been shown, they have no such quality."

The reason for the choice of the words "final and binding" will appear from the history of legislation providing for mediation of railway labor disputes. Under both the Act of May 20, 1926, 45 U.S. C.A. § 151 et seq. and the Transportation Act of 1920, 41 Stat. 456, as well as the system of labor mediation which was created during the first world war when the railroads were under federal control, the boards had advisory powers only. See Pennsylvania R. Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536. Under the Act of 1926 their awards could be given some practical effect, but only by stipulation. These provisions were not entirely successful and it is plain that the words in question adopted by the framers of the Act of 1934 make the decisions of the Board more efficacious than mere private advice. In this, however, there cannot be found an intention to invest them with the force of unappealable judicial decisions.

The Washington Terminal case, supra, did not, it is true, directly involve this question, the point decided by it being that the employer might not, prior to enforcement proceedings by the employees, review an adverse award by means of an action for a declaratory judgment. However, the majority opinion said, and reiterated, that the enforcement proceeding was a suit de novo in which the employer was not limited in its defenses to matters stated in the award and that the findings of the Board did not have finality as to either facts or law. It is evident that a vast deal of careful study and elaborate attention was devoted to the writing of the opinion. Its dicta are persuasive and leave no doubt that it was indeed the considered opinion of the majority that awards are not final and binding to the extent which the appellants here contend.

The judgment of the District Court is affirmed.