FRED A. KOEHLER, Plaintiff-Appellee, *v.* ILLINOIS CENTRAL GULF
RAILROAD COMPANY, Defendant-Appellant.

Fifth District No. 5—83—0401

Opinion filed May 3, 1984.

HARRISON, J., dissenting.

Richard F. Nash and James R. Garrison, both of Gundlach, Lee, Egg-
mann, Boyle & Roessler, of Belleville, for appellant.

C. E. Heiligenstein and Brad L. Badgley, both of Belleville, and James H.
Cooksey, of Centralia, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the
court:

Plaintiff Fred A. Koehler instituted this action against his em-
ployer, defendant Illinois Central Gulf Railroad Company, in the cir-
cuit court of St. Clair County. He alleged in his complaint that he had
been wrongfully discharged from his employment for exercising his
rights under the Federal Employers' Liability Act or FELA (45
U.S.C. sec. 51 *et seq.*). The defendant moved to dismiss the complaint,
but the trial court denied that motion. At the defendant's request, the
court certified a question for interlocutory appeal, and we granted
defendant's application for leave to appeal. (87 Ill. 2d R. 308.) We
must reverse the decision of the trial court because an employee who
is covered by a collective bargaining agreement prohibiting termina-
tion without just cause may not maintain a tort action against his em-
ployer for retaliatory discharge.

The plaintiff's employment with the defendant was terminated in
1979. At that time, an action brought by the plaintiff against the
defendant under the FELA was pending in the circuit court of St.
Clair County, and, in 1974, the plaintiff obtained a verdict in his favor

against the defendant in a suit brought under the same enactment. As a member of the Brotherhood of Railway Carmen of America, their Helpers and Apprentices, the plaintiff was protected by a collective bargaining agreement between the defendant and the System Federation No. 99, Railway Employees' Department, AFL-CIO. That agreement prohibited the unjust termination of employment and provided for a grievance procedure in the case of violation of the agreement.

In December 1979, the plaintiff's local union submitted a grievance on his behalf to the defendant. It was denied. Pursuant to the collective bargaining agreement, an appeal from this denial was taken within the defendant. The grievance was again denied. In February 1981, the Brotherhood of Railway Carmen submitted the plaintiff's claim to the National Railroad Adjustment Board. That claim was still pending when the notice of appeal was filed in the present case. In 1983, a hearing was held on the plaintiff's claim, the board rendered its decision, and the plaintiff was reinstated as an employee of the defendant, with full seniority, but without retroactive pay or benefits.

The question certified by the trial court was whether an employee whose employment is covered by the Railway Labor Act (45 U.S.C. sec. 151 *et seq.*), portions of which are incorporated by reference into the grievance procedures in the collective bargaining agreement at bar, may bring a wrongful discharge action in State court without exhausting the remedies provided by that act. Of course, the plaintiff has now exhausted those remedies by pursuing his claim to a successful conclusion. The focus of the briefs in this court is instead upon whether the remedies established by the act preempt any State tort action for wrongful discharge.

Subsequent to oral argument in this case, we filed an opinion in *Mouser v. Granite City Steel Division* (1984), 121 Ill. App. 3d 834, 460 N.E.2d 115. In *Mouser*, we examined conflicting decisions in the appellate court and the Illinois Federal courts on the issue of whether an employee covered by a collective bargaining agreement preventing discharge without just cause could bring an action for wrongful discharge against his employer. We observed that the policies behind that judicially created tort were not present in the case of an employee covered by such an agreement. Along with the majority of districts in this court, and the Federal courts in this State, we concluded that the tort of wrongful or retaliatory discharge was not available to an employee whose employment was governed by a collective bargaining agreement proscribing termination of employment without just cause.

There is no question that the plaintiff here is covered by such an agreement. Under *Mouser*, then, he may not maintain an action in

tort for wrongful discharge under Illinois law. Having decided that no Illinois tort remedy supports the plaintiff's complaint, we need not decide whether such a remedy would be preempted by Federal law if it existed. Accordingly, the decision of the circuit court of St. Clair County is reversed and the plaintiff's complaint is dismissed with prejudice.

Order reversed; complaint dismissed with prejudice.

JONES, J., concurring.

JUSTICE HARRISON, dissenting:

I respectfully dissent, for I believe that the result reached in this case operates to undermine the public policy considerations inherent in our supreme court's recognition of a cause of action for retaliatory discharge. In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, wherein such cause of action was recognized, the court also held that punitive damages may be awarded to the discharged employee under appropriate circumstances. The court noted that, in the absence of the deterrent effect of punitive damages, there would be little to dissuade an employer from wrongfully discharging an employee. (74 Ill. 2d 172, 186.) In so holding, the court joined those courts which have recognized that the situation of the employee and employer in today's society is hardly equivalent, and that the "mutuality of obligations" rule permitting discharge of the employee at will for any or no cause is unduly harsh in the modern world. (See *Smith v. Atlas Off-Shore Boat Service, Inc.* (5th Cir. 1981), 653 F.2d 1057, 1060-63, and authorities cited therein.) In my view, the holdings in the instant case and the cases relied on in support of today's result operate to take away a significant part of what our supreme court in *Kelsay* expressly gave, without restriction, to the employee discharged for exercising the rights expressly given him by legislative enactment. Nothing in *Kelsay* even remotely indicates that its protections are not to extend to employees covered by a collective bargaining agreement, and today's decision has the irrational effect of immunizing from punitive damages the employer who fires a union member, while providing no such protection to the employer who fires a nonunion employee. *Wyatt v. Jewel Cos.* (1982), 108 Ill. App. 3d 840, 841-42, 439 N.E.2d 1053.

Moreover, in addition to these general policy considerations, specific analysis of the differing functions of a collective bargaining agreement and the tort remedy for retaliatory discharge underscores

the erroneousness of the result reached by the majority herein. The issue before this court does not involve interpretation of a collective bargaining agreement, an appropriate matter for arbitration (*Hendley v. Central of Georgia R.R. Co.* (5th Cir. 1980), 609 F.2d 1146, 1151); rather, the question here is whether the terms of the agreement can preclude the pursuit of a wholly independent and judicially created remedy for retaliatory discharge. As observed by Justice Barry in his well-reasoned dissent in *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407, 407 N.E.2d 95 (Barry, J., dissenting), "in his complaint the plaintiff is not alleging that the discharge was *wrongful* in the sense that the terms of the collective bargaining agreement were violated. [Citations.] Rather, the plaintiff is seeking damages for his *retaliatory* discharge based upon his pursuing a workmen's compensation claim. The plaintiff's cause of action sounds not in contract, but in tort. It is based not upon violation of the terms of the collective bargaining agreement, but upon a violation of the public policy of the State of Illinois to compensate employees for work-related injury." Here, plaintiff's action is based upon an express public policy seeking to deter retaliatory discharge, and not upon anything granted to the employee under the terms of the collective bargaining agreement.

Finally, we should not ignore the reality that many collective bargaining agreements simply do not provide the discharged employee with protection comparable to that afforded by *Kelsay*. As one law review article dealing with *Kelsay* has noted, reliance on collective bargaining agreements alone under the circumstances presented here may deprive the employee of any recovery in some cases, as when a union is reluctant to arbitrate, or may severely limit the employee's recovery. (Note, *Kelsay v. Motorola, Inc.—Illinois Courts Welcome Retaliatory Discharge Suits Under the Workmen's Compensation Act*, 1980 U. Ill. L.F. 839, 852 & n.80, 853 & n.81.) Indeed, the potential for unfair diminution of the employee's recovery is graphically illustrated by this case, where plaintiff's full pursuit of his rights under the collective bargaining agreement yielded nothing better than reinstatement without retroactive pay or benefits. Such a result does nothing to provide the disincentive for retaliatory discharge inherent in *Kelsay*. Today's decision, which eviscerates both the rights conferred on employees by *Kelsay* and the ability of the courts to give full force to legislative schemes designed for the protection of employees, is simply out of touch with the slow but steady evolution of the rights of employees in the latter half of this century.