(No. 60233.—

FRED A. KOEHLER, Appellant, v. ILLINOIS CENTRAL GULF RAILROAD COMPANY, Appellee.

*Opinion filed December 20, 1985.—Rehearing denied February 4, 1986.*

GOLDENHERSH, J., took no part.
SIMON, J., dissenting.

C. E. Heiligenstein and Brad L. Badgley, of Belleville, and James H. Cooksey, of Crain, Cooksey, Veltman & Pursell, Ltd., of Centralia, for appellant.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard F. Nash and James R. Garrison, of counsel), for appellee.

James C. Cook, of Walker & Williams, P.C., of Belleville, and Nina K. Wuestling, of St. Louis, Missouri, for *amici curiae* Missouri Pacific Railroad Company and Alton & Southern Railway Company.

Baker & McKenzie, of Chicago (Francis D. Morrissey and Andrew J. Boling, of counsel), for *amici curiae* Atchison, Topeka & Santa Fe Railway Co. *et al.*

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Fred A. Koehler, filed suit in the circuit court of St. Clair County against defendant, the Illinois Central Gulf Railroad Company, his employer, alleging retaliatory discharge. Defendant moved to dismiss the suit, arguing that resolution of plaintiff's complaint for retaliatory discharge came within the exclusive jurisdiction of the National Railroad Adjustment Board pursuant to the Federal Railway Labor Act (45 U.S.C. secs. 151 through 164 (1982)) (RLA). The trial court denied defendant's motion but granted its motion to certify the question for interlocutory appeal pursuant to our Rule 308(a) (87 Ill. 2d R. 308(a)). The following issue was submitted for review:

"Whether a railroad employee covered under the provisions of the Railroad [sic] Labor Act, 45 U.S.C. section 151 et seq. may bring an action in state court against his employer for wrongful discharge without first exhausting his administrative remedies available under the Railroad [sic] Labor Act."

A majority of the appellate court reversed the trial court and entered judgment dismissing plaintiff's complaint with prejudice. (123 Ill. App. 3d 1038.) In so deciding, the court did not address either the issue certified or those briefed by the parties but relied instead on its decision in *Mouser v. Granite City Steel Division* (1984), 121 Ill. App. 3d 834, which held that the tort of retaliatory discharge was not available to an employee covered by a collective-bargaining agreement.

Plaintiff sought leave to appeal to this court. On leave to appeal, this court entered an order, under its supervisory authority, reversing the judgment of the appellate court and remanding the cause to the circuit court to proceed in conformity with *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143. This order was predicated on the belief that our recent decision in *Midgett* was dispositive. See 101 Ill. 2d 566.

Defendant moved for reconsideration of the supervisory order. In its memorandum supporting the motion, defendant argued that the RLA preempts any State court adjudication of employment-based disputes between railroads and their employees, including an action for retaliatory discharge. Upon reconsideration, the following order was entered: "[T]he motion for reconsideration of the supervisory order entered in this cause on October 19, 1984, is allowed. Reconsideration of this case will be confined to the Federal preemption issue [and the collective-bargaining-agreement issue]."

The factual basis of plaintiff's claim began with an injury to his right knee sustained in January 1972. Plain-

tiff recovered and was certified as fit to return to work with defendant by his physician and defendant's physicians. In June 1972, plaintiff filed suit to recover damages for the knee injury pursuant to the Federal Employers' Liability Act (45 U.S.C. secs. 51 through 60 (1970)) (FELA), a Federal statute applicable to interstate railroads in their capacity as employers. FELA imposes liability on railroad employers for injuries to employees caused by an employer's negligence. (45 U.S.C. sec. 51 (1970).) This suit was tried to a verdict, but the record does not indicate which party prevailed on the verdict.

Plaintiff sustained a second work-related injury in December 1978. The injury was to his back. In the course of various medical examinations conducted by defendant's physicians occasioned by this second injury, interest in plaintiff's earlier knee injury was revived.

A physician for defendant reported that he was more concerned about plaintiff's prior knee injury than he was about the recent back injury. In a report to defendant in April 1979, the physician noted that the knee had undergone "degenerative change." Thereafter, in December 1979, the chief medical officer for defendant permanently disqualified plaintiff from his position as a carman welder because of "degenerative changes in the right knee." Plaintiff was permanently disqualified even though his physician had reported that plaintiff had no disability from either the knee or back injuries which would restrict him in the performance of his duties.

One week after his permanent disqualification plaintiff filed a grievance pursuant to the terms of the collective-bargaining agreement in effect between his union and defendant. One month later, in January 1980, plaintiff filed a second suit under FELA in State court seeking recovery for his back injury. The record does not disclose the result of this second FELA action. Six months later, in July 1980, plaintiff filed the instant action.

In his complaint, plaintiff alleged that his permanent disqualification as a carman welder was in retaliation for having sued defendant under FELA. At the time plaintiff filed his action for retaliatory discharge the second suit under FELA and his grievance were pending. Plaintiff's grievance has since been resolved. The grievance was referred to the National Railroad Adjustment Board in February 1981 as provided by the RLA. Resolution was reached in July 1983 when plaintiff was ordered reinstated with retroactive seniority upon securing a favorable medical report from a jointly selected panel of three physicians. Plaintiff was reinstated with full seniority pursuant to this order in September 1983.

This record reveals that, within seven months of his permanent disqualification as a carman welder, plaintiff had initiated actions in three separate forums. Our present concern is with the last action taken, the suit for retaliatory discharge. We address the limited issue presented: Does the RLA preempt an action for retaliatory discharge brought by an employee covered by the Act?

The leading case on the preemptive effect of the RLA is *Andrews v. Louisville & Nashville R.R. Co.* (1972), 406 U.S. 320, 32 L. Ed. 2d 95, 92 S. Ct. 1562. There the Supreme Court held that an employee who was not permitted to return to work by his employer after recovering from injuries sustained in an automobile accident could not maintain a suit in State court on a State-law contract claim for wrongful discharge. The court found that the RLA governed the dispute. The court also held that the RLA preempted State actions based on wrongful discharge and that the National Railroad Adjustment Board has exclusive jurisdiction to adjudicate all claims arising under the RLA.

Plaintiff attempts to distinguish his case from *Andrews* by pointing out that *Andrews* addressed *wrongful* rather than *retaliatory* discharge. He concedes that

wrongful discharge is a claim grounded in the contract of employment, thereby falling within the exclusive jurisdiction of the RLA. However, plaintiff contends that his claim of retaliatory discharge is not a contractual action but, rather, a tort action. Because his action is in tort, plaintiff argues that *Andrews* is inapposite. We disagree. The court in *Andrews* made it clear that the preemptive effect of the RLA was not limited to contractual disputes. The court explained that "the compulsory character of the administrative remedy provided by the Railway Labor Act for disputes such as that between petitioner and respondent *stems not from any contractual undertaking between the parties but from the Act itself.*" (Emphasis added.) 406 U.S. 320, 323, 32 L. Ed. 2d 95, 99, 92 S. Ct. 1562, 1565.

Moreover plaintiff's contention was recently rejected by the United States Court of Appeals for the Seventh Circuit, in *Jackson v. Consolidation Rail Corp.* (7th Cir. 1983), 717 F.2d 1045, 1049. There, as in the instant case, a railroad employee sought recovery on a State-law tort claim for retaliatory discharge, alleging that he was terminated for filing an action under the FELA. The plaintiff in *Jackson* argued that *Andrews* was not controlling because *Andrews* applied to "wrongful" rather than to "retaliatory" discharge. The court did not find this distinction persuasive, characterizing retaliatory discharge as merely one type of wrongful discharge. (717 F.2d 1045, 1049.) The court went on to note that the State-law claim was "identical to the claim he would have made, had he pursued the grievance through administrative channels." (717 F.2d 1045, 1054.) Because the State-law tort claim and any claim brought under the RLA would be the same claims, the court found *Andrews* controlling and expressly held that the RLA preempts a State-law tort action for retaliatory discharge premised on termination for having filed suit under the FELA. 717

F.2d 1045, 1051, 1056.

We agree with the Seventh Circuit's analysis and application of *Andrews*. We therefore hold that the RLA preempts our State-law tort action alleging retaliatory discharge for having filed suit under the FELA where, as here, it is brought by an employee covered by the RLA.

Plaintiff seeks to avoid the preemptive effect of the RLA by arguing that his case falls within the ambit of certain recognized exceptions to preemption. Specifically, he argues that preemption does not apply "where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Farmer v. United Brotherhood of Carpenters & Joiners of America* (1977), 430 U.S. 290, 302, 51 L. Ed. 2d 338, 351, 97 S. Ct. 1056, 1064.

Plaintiff's reliance on *Farmer* is misplaced. First, the *Farmer* exception to preemption, by its terms, applies to the preemptive effect of the National Labor Relations Act (430 U.S. 290, 292, 51 L. Ed. 2d 338, 345, 97 S. Ct. 1056, 1059), not to the RLA. Second, assuming the applicability of *Farmer* to the instant case, our reading of the RLA indicates that a State-law action for retaliatory discharge would "threaten undue interference with the federal regulatory scheme." The RLA is an elaborate and extensive administrative scheme. (45 U.S.C. secs. 151 through 164 (1982).) Under this scheme "disputes *** growing out of grievances" are to be resolved in the first instance by the parties. If the parties are unsuccessful, the RLA provides that the dispute be referred to the National Railroad Adjustment Board for resolution. (45 U.S.C. sec. 153 First (i) (1982).) Decisions of the Adjustment Board are final and binding. (45 U.S.C. sec. 153 First (m) (1982).) Under the RLA, a party dissatisfied with a decision of the Adjustment Board may obtain limited review in Federal district court with appeal to the

court of appeals. (45 U.S.C. sec. 153 First (q) (1982).) The RLA does not accord original jurisdiction over employment-related disputes to either Federal or State courts. Original, exclusive jurisdiction is given to the Adjustment Board. (45 U.S.C. sec. 153 First (i) (1982).) As noted above, jurisdiction over appeals from decisions of the Adjustment Board is given the Federal courts. 45 U.S.C. sec. 153 First (q) (1982).

Our review of the RLA indicates that plaintiff's suit for retaliatory discharge is precluded as an "undue interference" with the dispute-resolution scheme of the RLA. Stripped to its essentials, plaintiff's suit is a reformulation in tort of his grievance which, as the record shows, fell within the purview of the RLA. Allowing plaintiff's suit to proceed would allow a State court, applying State law, to resolve "disputes *** growing out of grievances." (45 U.S.C. sec. 153 First (i) (1982).) Certainly, this result would unduly interfere with the operation of the dispute-resolution machinery of the RLA. Therefore, even if *Farmer* applies to cases arising under the RLA, it is of no assistance to plaintiff.

A thorough reading of the RLA makes clear Congress' intent that employment-based disputes between parties covered by the RLA are to be resolved exclusively pursuant to the Act. Under the RLA, State courts have no jurisdiction to hear and resolve such disputes. (45 U.S.C. secs. 153 First (i), (q) (1982).) Because plaintiff's tort action for retaliatory discharge is, in essence, an employment-based dispute, we hold that it is preempted by the RLA.

For the reasons here stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.

JUSTICE SIMON, dissenting:

Because the plaintiff's claim in this case is wholly independent of rights and obligations embodied in the defendant's collective-bargaining agreement, I cannot agree with the majority's conclusion that the Railway Labor Act (45 U.S.C. sec. 151 *et seq.* (1982)) (RLA) preempts this action. Retaliatory discharge is a tort arising from State law, while the "wrongful" in wrongful discharge is an epithet denoting a discharge made in breach of a labor agreement. Retaliatory discharge is not the equivalent of wrongful discharge since the former is not an action premised on the employer's breach of contract. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 187.) Regardless of terms contained in the collective-bargaining agreement, the elements of retaliatory discharge remain the same. Even if the collective-bargaining agreement in this case were written most favorably for the employer, it could at most grant the employer the right to discharge the plaintiff at will, and an action for retaliatory discharge would still be well founded.

For this reason, *Jackson v. Consolidated Rail Corp.* (7th Cir. 1983), 717 F.2d 1045, is not an applicable precedent. That court equated retaliatory discharge with wrongful discharge in violation of a labor agreement, but the two terms are not synonymous. As Judge Posner noted in his separate opinion, retaliatory discharge is not a grievance within the Board's exclusive jurisdiction "because it would exist even if there were no collective bargaining agreement ***." 717 F.2d 1045, 1059 (Posner, J., dissenting in part).

The rationale for preemption in cases of wrongful discharge is that an allegedly wrongful discharge requires construction of the labor contract, and it is therefore a "minor dispute" within the exclusive jurisdiction of the National Railroad Adjustment Board. (45 U.S.C. sec. 153

First (i) (1982); *Carbone v. Meserve* (1st Cir. 1981), 645 F.2d 96, 98 ("minor dispute" refers to disputes over the meaning of contractual terms).) Exclusive jurisdiction over minor disputes is vested with the Board because it has administrative expertise in "the interpretation of collective bargaining agreements," and because "uniform administrative interpretation [of those agreements] is of great importance." (*Pennsylvania R.R. Co. v. Day* (1959), 360 U.S. 548, 551-52, 3 L. Ed. 2d 1422, 1426, 79 S. Ct. 1322, 1324.) It is apparent from the development of retaliatory discharge as a tort in this State that provisions of an employment contract are superfluous to a determination of whether a tortious discharge occurred. (See *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 149 ("to provide a complete remedy it is necessary that the victim of a retaliatory discharge be given an action in tort, independent of any contract remedy the employee may have based on the collective-bargaining agreement").) In fact, this court recently held that an action for retaliatory discharge does not lie where the plaintiff alleges that he was discharged in retaliation for pursuing private rights conferred by his contract of employment (*Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65), so it cannot be said that the distribution of private rights in the defendant's collective-bargaining agreement is relevant to the outcome of this case.

In an action for retaliatory discharge, the only issues are why an employee was fired and whether that reason was in contravention of clearly mandated public policy (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 133-34). These determinations are squarely within the expertise of a court of law. Not only is the Adjustment Board without jurisdiction over noncontractual disputes (*Southern Pac. Co. v. Joint Council of Dining Car Employees* (9th Cir. 1947), 165 F.2d 26), but also the Board—which is neither a court nor a governmental

body (*Dahlberg v. Pittsburgh & L.E.R. Co.* (3d Cir. 1943), 138 F.2d 121)—is not particularly qualified to identify the public policy of this State or usurp the fact-finding function of a trial court.

The majority's reliance on *Andrews v. Louisville & Nashville R.R. Co.* (1972), 406 U.S. 320, 32 L. Ed. 2d 95, 92 S. Ct. 1562, is misplaced. *Andrews* holds only that *contractual* disputes must proceed through the RLA's administrative procedure even if the parties have agreed otherwise. There is no basis for the contention in the majority opinion that Andrews extends the preemptive effect of the RLA beyond contractual disputes. In fact, *Andrews* held the action in that case to be preempted because it was a contractual dispute. (406 U.S. 320, 324, 32 L. Ed. 2d 95, 99, 92 S. Ct. 1562, 1564 ("petitioner's claim, and respondent's disallowance of it, stem from differing interpretations of the collective-bargaining agreement. *** [and h]is claim is therefore subject to the Act's requirement that it be submitted to the Board for adjustment").) Retaliatory discharge is a law of State rights and obligations existing "independently of private agreements"; since it cannot be "waived or altered by agreement," it is error to preempt State jurisdiction and defer to an administrative agency whose sole function is the interpretation of negotiated agreements. *Allis Chalmers v. Lueck* (1985), 471 U.S. ___, ___, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.

This action does not implicate contractual rights or Federal labor policy. I cannot, therefore, see any basis in law or logic for preemption of an uncontrived tort action in favor of Federal procedures for the resolution of labor contract disputes, and I dissent.