GILDA LARA-GIRJIKIAN, Petitioner-Appellant, v. MEXICANA AIRLINES *et al.*, Respondents-Appellees.

First District (3rd Division)   No. 1—98—2229

Opinion filed September 1, 1999.

Gerald A. Goldman, Arthur R. Ehrlich, and Jonathan C. Goldman, all of Goldman & Ehrlich, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for respondent Human Rights Commission.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

The Illinois Human Rights Commission dismissed petitioner's complaint for lack of jurisdiction. Petitioner appeals. We have jurisdiction under Supreme Court Rule 335 (155 Ill. 2d R. 335) and section 8—111 of the Illinois Human Rights Act (775 ILCS 5/8—111 (West 1996)). We affirm.

Petitioner was employed by Mexicana Airlines as a full-time station sales representative. Station sales representatives are subject to a collective bargaining agreement between the union and Mexicana.

Petitioner's station sales representative duties included passenger service, ticket counter, ramp, control, operations and gate agent. Petitioner also had cashier duties. The control and operations agent positions were desk duties. The other positions were not. All full-time station sales representatives must work mandatory overtime as set out in the collective bargaining agreement, depending on Mexicana's needs. Overtime is needed if flights are delayed or baggage is lost. Overtime duty is determined by order of reverse seniority.

Petitioner was injured in April 1991, when a baggage cart rolled over her right foot. She sought medical attention in November 1992, after noticing a lump on her foot. Surgery on her injured foot followed in January 1994. She was off work until May 2, 1994. Her doctor then released her for work, under the restriction that petitioner not work overtime in June. This restriction was later extended to include July.

Mexicana excused petitioner from mandatory overtime in June, but refused to do so for July. The collective bargaining agreement directs that overtime assignments be made in reverse order of seniority. Mexicana claims that petitioner's inability to work overtime created a burden on other personnel who had to work overtime even though they had more seniority than petitioner. Mexicana also claims that complying with this restriction during the summer travel season

compromised airline operations as a whole. Mexicana placed petitioner on medically inactive status in July 1994. The union then filed a grievance under the collective bargaining agreement on petitioner's behalf, contesting her placement on medically inactive status. The record shows that this grievance remains pending.

In October 1994, petitioner notified Mexicana that she would need an additional three months exemption from overtime. Mexicana then offered petitioner a permanent part-time sales representative job. Mexicana claims that this job accommodated petitioner's inability to work overtime because petitioner would only work 20 hours per week, with a possibility of working up to 20 hours overtime.

The part-time position was to begin on October 30, 1994. Petitioner was to tell Mexicana which shift she wanted to work. Petitioner did not respond. Mexicana then notified petitioner that she was to report for work at 6 a.m. on October 30, 1994, to work the 6 to 10 a.m. shift. Petitioner never reported for work.

Mexicana notified petitioner on November 4, 1994, that disciplinary action would be taken against her for three unjustified absences from work. Petitioner contends that Mexicana knew she did not accept the part-time position and that she would not be reporting for work. Petitioner states that her former lawyer spoke to a Mexicana secretary on October 29, 1994. Her lawyer told the secretary that petitioner would not report for work on October 30. Petitioner claims that her attorney also sent a letter on October 30, 1994. Mexicana disputes this, claiming there is no record of the conversation, and further, the secretary the attorney allegedly spoke to did not work on October 29, 1994. Mexicana states that the collective bargaining agreement sets out how employees are to notify Mexicana that they cannot report for work. Mexicana claims that petitioner did not follow this procedure.

A disciplinary hearing was held on December 12, 1994. Mexicana discharged petitioner on December 30, 1994. The union filed a grievance regarding petitioner's discharge in January 1995. This grievance also remains pending.

Petitioner filed a discrimination charge with the Illinois Department of Human Rights on January 5, 1995. She alleged that Mexicana's refusal to accommodate her physical handicap and later discharge violated the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1996)) (the Act). She alleged that her physical handicap resulted from her foot surgery. Petitioner alleges Mexicana refused to give her an accommodation—an exemption from overtime duty until she was fully healed.

Petitioner filed her own complaint with the Human Rights Commission (the Commission) on November 22, 1995. Mexicana answered,

stating that petitioner's discharge was consistent with the terms of the collective bargaining agreement. Mexicana also argued that petitioner's inability to work overtime made her unqualified to perform the essential functions of her job as a station sales representative.

The parties filed a joint hearing memorandum on March 24, 1997, in which both conceded that the terms and conditions of petitioner's employment are governed by the collective bargaining agreement. The parties also conceded that the station sales representative job description and responsibilities are set out in article IV of the collective bargaining agreement.

The hearing was held on June 16 and 17, 1997. The bulk of the testimony taken at the hearing related to interpretations of the collective bargaining agreement. Petitioner's witnesses explained why they thought Mexicana violated the contract, while Mexicana witnesses justified their actions based on the contract. Both parties offered the collective bargaining agreement as an exhibit.

The administrative law judge (ALJ) denied Mexicana's motion for a directed finding, questioning the Commission's jurisdiction because the dispute centered on the collective bargaining agreement. The ALJ directed the parties to file posthearing briefs on the issue of whether petitioner's charge was preempted by the Railway Labor Act (RLA) (45 U.S.C. § 151 (1994)) and the Federal Aviation Act (FAA), as amended by the Airline Deregulation Act (49 U.S.C. § 41713(b)(1) (1994)).

Petitioner's posthearing brief failed to address the preemption issue. Mexicana's brief only addressed the RLA. Mexicana contended the RLA did not preempt complainant's claim because no interpretation of the collective bargaining agreement was necessary to resolve petitioner's discrimination charge.

The ALJ issued a recommended decision on March 4, 1998. The decision noted that neither party addressed the FAA's application to petitioner's claim and only Mexicana addressed the application of the RLA. The ALJ then concluded that petitioner's claim was preempted by both the RLA and the FAA. Petitioner filed objections to the recommended decision. There she addressed the preemption issue for the first time. The Commission declined to change the ALJ's decision, adopting it as a final order on May 29, 1998. Complainant petitioned for direct appellate review on June 25, 1998.

We must determine whether the Commission correctly found that complainant's claim is preempted by federal law.

We note that only petitioner and the Commission filed briefs. Mexicana did not participate in this appeal.

■ We review an administrative agency's findings on a question of

law *de novo. City of Belvedere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998); *Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637 (1997); *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 479, 672 N.E.2d 1136 (1996). The agency's determination is not binding on us and is rejected if erroneous. *Denton v. Civil Service Comm'n*, 176 Ill. 2d 144, 148, 679 N.E.2d 1234 (1997).

■ Employment-based disputes arising under the RLA must be resolved exclusively under the Act. *Koehler v. Illinois Central Gulf R.R. Co.*, 109 Ill. 2d 473, 480, 488 N.E.2d 542 (1985). Disputes under the RLA are either "major" or "minor." *Gendron v. Chicago & North Western Transportation Co.*, 139 Ill. 2d 422, 427, 564 N.E.2d 1207 (1990). The terms "major" and "minor" have nothing to do with the importance of the issue to the disputants. Rather, they simply denominate categories for jurisdictional purposes. "Major" disputes relate to the creation or modification of a collective bargaining agreement. "Minor" disputes involve the interpretation or application of an existing collective bargaining agreement. *Gendron*, 139 Ill. 2d at 428. Grievances arising out of a collective bargaining agreement are subject to exclusive resolution under the RLA. *Jackson v. Consolidated R. Corp.*, 717 F.2d 1045, 1052 (7th Cir. 1983). State actions that seek to circumvent this process are preempted by the RLA. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 323-24, 32 L. Ed. 2d 95, 99, 92 S. Ct. 1562, 1564-65 (1972).

■ Petitioner argues that the RLA does not preempt her discrimination claim because the claim can be resolved without interpreting the collective bargaining agreement. The Commission, adopting the opposite view from the one taken by Mexicana at the hearing, contends that the collective bargaining agreement is central to petitioner's claim.

Petitioner's complaint alleged that Mexicana violated the Illinois Human Rights Act when it discharged her instead of accommodating her handicap. But petitioner also asserted that Mexicana's offer of a part-time position violated the terms of the collective bargaining agreement.

Mexicana alleged in its answer that the actions taken were consistent with the terms of the collective bargaining agreement. Mexicana maintained that petitioner's position required mandatory overtime. Petitioner's inability to work overtime made her unqualified to fulfill the duties of her position. Petitioner was offered a part-time position where she could fulfill her duties. Her failure to report to work without a justified absence made her susceptible to discipline and discharge under the collective bargaining agreement.

A dispute is "minor" where an employer asserts a contractual right to take the contested action and the action is arguably justified by the terms of the collective bargaining agreement. *Consolidated R. Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 307, 105 L. Ed. 2d 250, 264, 109 S. Ct. 2477, 2483 (1989). Petitioner conceded that the terms and conditions of her employment are set out in articles IV and VI of the collective bargaining agreement. This agreement also set forth the disciplinary measures to be taken when an employee fails to report for work, which petitioner failed to do. Petitioner's contention that her transfer to a part-time position in and of itself violates the collective bargaining agreement only serves to underscore her claim as one that requires an interpretation of the collective bargaining agreement. It is a "minor" dispute subject to the RLA.

The ALJ found complainant's claim was preempted because the arguments made showed that the parties sought to "vindicate substantive rights derived from the collective bargaining agreement." As the ALJ noted:

> "Since both parties point me to the collective bargaining agreement to decide this matter, whether respondent discriminated against complainant by violating those substantive rights cannot be determined without interpreting and applying the collective bargaining agreement. Since a decision on the merits would require me to interpret the meaning of those provisions, a 'minor' dispute is involved. *** [I]t is subject to arbitration *** under the RLA."

We agree. Our conclusion is further supported by petitioner's actions: she filed two grievances under the collective bargaining agreement, contesting the same conduct by the airline that gave rise to her discrimination charge. We do not believe that petitioner can invoke the grievance procedures under a collective bargaining agreement on the one hand, then file another action that disavows the agreement to avoid federal preemption.

Petitioner's reliance on the Commission's decision in *In re Zimmerman*, Ill. Hum. Rts. Comm'n Rep. 1986CN3091 (November 23, 1992), is misplaced.

In *Zimmerman*, the Commission found that a handicap discrimination claim was not preempted by the RLA. *Zimmerman* is not binding on us. *Denton*, 176 Ill. 2d at 148. Even if it were, *Zimmerman* is easily distinguished. Unlike petitioner's claim, the complainant in *Zimmerman* was not subject to a collective bargaining agreement that implicated the RLA.

We note that there are no Illinois cases addressing preemption by the RLA of a handicap discrimination claim. The ALJ cited the Commission's earlier decision in *In re Schorsch*, Ill. Hum. Rts. Comm'n

Rep. 1991CN1056 (November 20, 1996), where a handicap discrimination claim was preempted by the RLA. *Schorsch* is instructive on this issue. Although not binding, agency interpretation is entitled to deference on review. *Castillo v. Jackson*, 149 Ill. 2d 165, 179, 594 N.E.2d 323 (1992).

In *Schorsch*, the complainant was a ramp agent who took lithium to treat his manic depression. The complainant conceded that lithium impaired his ability to fulfill his ramp agent duties. The complainant applied for a transfer to an aircraft mechanic position, but was discharged because of his condition and the medication taken to control it. The complainant filed a discrimination charge, alleging he was denied a reasonable accommodation for his handicap when his employer refused to transfer him to the aircraft mechanic position. Complainant was a probationary employee when he was discharged. The Commission found that it lacked jurisdiction because the "facts of the matter are inextricably intertwined with the grievance machinery of the applicable collective bargaining agreement." *In re Schorsch*, Ill. Hum. Rts. Comm'n Rep. 1991CN1056, at 7.

Here, both petitioner and Mexicana relied on provisions of the collective bargaining agreement to bolster their arguments. Both parties submitted a copy of the agreement as their first exhibit. Petitioner's discrimination charge is intertwined with the collective bargaining agreement, triggering the RLA preemption.

The FAA reads:

> "[No] state *** shall enact or enforce any law, rule, regulation, or standard or other provision having the force and effect of law relating to rates, routes or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation." 49 U.S.C. app. § 1305(a)(1) (1988).

The phrase relating to "rates, routes or services of any carrier" gives the preemption clause a wide scope. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992). We must decide whether petitioner's claims have a "connection with or reference to" airline rates, routes or services.

The primary service provided by an air carrier is air transportation between two points. *Hastalis v. Human Rights Comm'n*, 205 Ill. App. 3d 50, 52, 562 N.E.2d 1272 (1990), *appeal denied*, 136 Ill. 2d 544, 567 N.E.2d 332 (1991). The term "services" includes ground activities undertaken by an airline. *Hastalis*, 205 Ill. App. 3d at 52. The ALJ concluded that petitioner's station sales representative position related to rates, routes or services of an air carrier because her position required her to perform passenger service, ticket counter, ramp and gate agent duties. We agree.

Again, in the absence of applicable Illinois case law, we believe the Commission's decisions in *In re Klocek*, Ill. Hum. Rts. Comm'n Rep. 1988CN1209 (February 28, 1997), and *Schorsch* are instructive.

In *Klocek*, the complainant was a customer service support agent responsible for cleaning and restocking the airplane, closing the airplane door and moving supplies from the ground to the plane by a lift truck. A supervisor reported seeing the complainant under the influence of alcohol while on duty. The complainant was given the option to resign or be fired.

The Commission dismissed the complainant's discrimination claim for lack of jurisdiction. The Commission found that a customer service support agent's duties were integrally related to the transportation service of an air carrier, and the claim was preempted by the FAA. *Klocek*, Ill. Hum. Rts. Comm'n Rep. 1988CN1209.

In *Schorsch*, the Commission reasoned that the job of a ramp agent is integrally related to the transportation service of an air carrier and found that the FAA preempted a ramp agent's discrimination claim. *Schorsch*, Ill. Hum. Rts. Comm'n Rep. 1991CN1056.

Here, petitioner was not only a ramp agent, but she also had several other titles. Petitioner was also a passenger service agent, responsible for meeting arriving flights and directing passengers to customs and baggage claim areas. As a ticket counter agent, petitioner checked passengers in for their flights, assigned seats and handled baggage. As a gate agent, petitioner was in charge of getting passengers onto the plane and making announcements. Petitioner's duties as an operations agent required her to insure that baggage loaded on the plane was distributed uniformly. Other than piloting or repairing the plane, we cannot think of a position more related to the transportation of an air carrier than that held by petitioner.

Petitioner's attempt to distinguish *Hastalis* is unpersuasive. In *Hastalis*, the petitioner was not allowed to board an airplane after he refused to fill out a passenger assistance form. *Hastalis*, 205 Ill. App. 3d at 51. The petitioner was asked to fill out the form because he was blind and would need assistance in case of an emergency. *Hastalis*, 205 Ill. App. 3d at 51. The petitioner argued that the FAA did not preempt his claim because the requirement to fill an assistance form is not a "service" as that term is used in the FAA. The court disagreed, noting that the "service" at issue was not the requirement of a form, but the provision of air transportation. *Hastalis*, 205 Ill. App. 3d at 52. The court parenthetically noted that the safety of all passengers, including the complainant, was involved. *Hastalis*, 205 Ill. App. 3d at 53. But this acknowledgement was not the basis of the court's ruling.

Petitioner appears to argue that the *Hastalis* ruling is based on

passenger safety issues. Petitioner contends that *Hastalis* does not apply because her claim relates to Mexicana's conduct toward an employee. We do not read *Hastalis* as carving out such an exception. That safety issues were involved in *Hastalis* and not here is a distinction without a difference. Petitioner's counsel conceded at oral argument that no case supports the safety issue distinction she proposes. The FAA preempts petitioner's discrimination claim.

The dismissal of petitioner's complaint is affirmed.

Affirmed.

CERDA and McBRIDE, JJ., concur.